## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

CRYSTAL BOLDUC,

                Plaintiff,

     vs.

AMAZON.COM INC.,

            Defendant.

Civil Action No. 4:22-cv-615-ALM

## DEFENDANT AMAZON.COM, INC.'S RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................... 1

STATEMENT OF ISSUES ................................................................................................. 3

BACKGROUND ................................................................................................................. 3

I.    Facts and Allegations Pleaded in Complaint ........................................................... 3

II.   Additional Facts Relevant to Amazon's Standing Challenge ................................. 4

ARGUMENTS AND AUTHORITIES ............................................................................... 7

I.    The Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction Because
      Plaintiff Lacks Standing. ........................................................................................... 7

      A.    Legal Standards for Rule 12(b)(1) Dismissal for Lack of Standing ................... 7

      B.    Plaintiff Lacks Standing to Challenge Amazon's DSP Diversity Grant Program. ............. 9

            1.    Plaintiffs' Allegations Are Insufficient to Show That She Is Able and Ready to
                  Compete to Become a DSP Owner. ..................................................................... 11

            2.    Plaintiff Cannot Plead an Injury-in-Fact Because She Is Unaffected By Amazon's
                  DSP Grant Program. ............................................................................................. 14

II.   The Complaint Should be Dismissed Because Plaintiff Fails to State a Claim Upon Which
      Relief May Be Granted ............................................................................................. 18

CONCLUSION ................................................................................................................. 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aaron Priv. Clinic Mgmt. LLC v. Berry*,
    912 F.3d 1330 (11th Cir. 2019) ...................................................................................11, 12

*Adams v. Houston Cmty. Coll.*,
    No. CV H-22-1547, 2022 WL 4227260 (S.D. Tex. Sept. 12, 2022) ......................................19

*Adarand Constructors, Inc. v. Pena*,
    515 U.S. 200 (1995)................................................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................18

*Attala Cnty., Miss. Branch of NAACP v. Evans*,
    37 F.4th 1038 (5th Cir. 2022) ................................................................................................17

*Carney v. Adams*,
    141 S. Ct. 493 (2020)....................................................................................................*passim*

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
    140 S. Ct. 1009 (2020)......................................................................................................18, 20

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
    431 U.S. 395 (1977)................................................................................................................19

*Ellison v. Am. Bd. of Orthopaedic Surgery*,
    11 F.4th 200 (3rd Cir. 2021) ............................................................................................11, 14

*Evans v. Tubbe*,
    657 F.2d 661 (5th Cir. 1981) ...................................................................................................9

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ...............................................................................................4, 9

*Gaylor v. Inland Am. McKinney Towne Crossing LP, LLC*,
    No. 4:13-CV-307, 2014 WL 1912388 (E.D. Tex. May 13, 2014) ...........................................8

*Gegenheimer v. Stevenson*,
    No. 1:16-CV-1270-RP, 2017 WL 2880867 (W.D. Tex. July 5, 2017)....................................12

*Gohmert v. Pence*,
    510 F. Supp.3d 435 (E.D. Tex. 2021), *aff'd*, 832 Fed. Appx. 349 (5th Cir.
    2021) .......................................................................................................................................17

*Gratz v. Bollinger*,
  539 U.S. 244 (2003) ........................................................................................12, 15

*Greer's Ranch Café v. Guzman*,
  540 F. Supp. 3d 638 (N.D. Tex. 2021) ....................................................................12

*Hamilton v. United Parcel Serv., Inc.*,
  No. 1:11-CV-240, 2012 WL 760714 (E.D. Tex. Feb. 13, 2012) ...........................18

*Holman v. Vilsack*,
  582 F. Supp. 3d 568 (W.D. Tenn. 2022) ...........................................................12, 13

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
  143 F.3d 1006 (5th Cir. 1998) .................................................................................7

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ...................................................................................9

*Liverman v. McMurray*,
  No. 7:19-CV-00062-DC-RCG, 2019 WL 11660803 (W.D. Tex. Oct. 4, 2019) ......8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................7, 8, 10, 17

*Menchaca v. Chrysler Credit Corp.*,
  613 F.2d 507 (5th Cir. 1980) ...................................................................................8

*Morris v. Dillard Dep't Stores, Inc.*,
  277 F.3d 743 (5th Cir. 2001) .................................................................................19

*Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of
  Jacksonville, Fla.*, 508 U.S. 656 (1993) ................................................................15

*Palmer v. Paxton*,
  No. 4:15-CV-00657-ALM-CAN, 2016 WL 11472825 (E.D. Tex. Aug. 25,
  2016) .......................................................................................................................7

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ...................................................................................9

*Pederson v. Louisiana State Univ.*,
  213 F.3d 858 (5th Cir. 2000) ...........................................................................15, 16

*Phelps v. Wichita Eagle-Beacon*,
  886 F.2d 1262 (10th Cir. 1989) .............................................................................19

*Pucket v. Hot Springs Sch. Dist. No. 23-2*,
  526 F.3d 1151 (8th Cir. 2008) ...............................................................................14

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ..........................................................................7

*Rhodes v. U.S. Office of Special Counsel*,
   No. 3:05-CV-2402-K (BH), 2008 WL 2330576 (N.D. Tex. May 22, 2008)...........................9

*Simmons v. Triton Elevator, LLC*,
   No. 3:19-CV-1206-B, 2020 WL 7770245 (N.D. Tex. Dec. 30, 2020) ...........................18, 20

*Smart v. Int'l Broth. of Elec. Workers, Loc. 702*,
   315 F.3d 721 (7th Cir. 2002) ........................................................................20

*Warth v. Seldin*,
   422 U.S. 490 (1975).....................................................................................16

*Xerox Corp. v. Genmoora Corp.*,
   888 F.2d 345 (5th Cir. 1989) ..........................................................................7

**Statutes**

42 U.S.C. § 1981............................................................................ *passim*

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
   § 1357 (3d ed. 2004) ....................................................................................9

Fed. R. Civ. P. 12(b)(1)..........................................................................1, 7, 8

Fed. R. Civ. P. 12(b)(3)..............................................................................18

Fed. R. Civ. P. 12(b)(6)..................................................................1, 8, 9, 18, 20

Defendant Amazon.com, Inc. ("Amazon") respectfully moves the Court to dismiss Plaintiff's First Amended Class-Action Complaint ("FAC" or "Complaint") (Dkt. 8) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## INTRODUCTION

To deliver packages in the communities it serves, Amazon partners with local businesses—called Delivery Service Partners, or DSPs[2]—whose owners are responsible for hiring, training, and retaining a team of employee-drivers and managing a fleet of delivery vans.  To be offered a DSP contract, individuals must (among other things) submit an application, meet certain eligibility requirements, pass an extensive interview and screening process, and be willing to operate their business in an area where Amazon needs additional capacity.  Amazon's eligibility requirements are race-neutral and an applicant's race or ethnicity plays *no role whatsoever* in Amazon's process for selecting DSPs.  Amazon does, however, try to promote diversity within its DSP ranks by offering a $10,000 grant to new DSP owners who opt-in and identify as members of certain minority groups.

In this lawsuit, Plaintiff Crystal Bolduc ("Plaintiff" or "Bolduc") alleges that Amazon's DSP diversity grant program violates 42 U.S.C. § 1981 by discriminating against white and Asian-American DSP owners on the basis of their race.  Based on her own allegations, however, Plaintiff is not a DSP owner and has never applied to become one.  FAC at ¶¶ 19–24.  Plaintiff therefore lacks Article III standing, because she cannot show an actual or imminent injury arising from the

---

[1] Because Plaintiff purports to represent a class of individuals that includes individuals who have signed binding arbitration agreements, this Motion is filed without prejudice to and with an express reservation of Amazon's rights to move to compel arbitration at an appropriate time if Plaintiff is permitted to proceed in this case and as a class representative.

[2] Plaintiff refers throughout her Complaint to individuals who are, or who become, "delivery service partners."  To be accurate, it is actually *companies* (not individuals) who become delivery service partners, but the individuals who own (or will own) those companies go through the application process on behalf of their companies.

fact that Amazon offers a diversity grant to some DSP owners but not others.  Indeed, Plaintiff's § 1981 claim is the epitome of an abstract and generalized grievance by a member of the general population about an internal corporate program that has no actual effect on her.

Plaintiff attempts to plead the existence of an injury-in-fact by alleging that she "wishes to become an Amazon delivery service partner" and she is "'able and ready to apply.'"  FAC ¶¶ 19–20 (quoting *Carney v. Adams*, 141 S. Ct. 493, 499–500 (2020), and *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003)).  But those allegations, taken as true, are insufficient to establish standing because Bolduc pleads no facts showing that she has taken any concrete steps toward completing an application for the DSP program, or could meet even the most basic eligibility requirements for running such a business.

Moreover, Plaintiff's allegations that she is "able and ready to apply" to become a DSP owner are irrelevant here because Plaintiff does not allege discrimination in the selection of DSP applicants.  Amazon's selection process is race-neutral and highly selective (only 3% of applicants are accepted into the program), and Plaintiff does not, and cannot, allege that she is on unequal footing because of her race (or otherwise) in competing for a spot.  The relevant inquiry here is whether Plaintiff has alleged facts showing that she was affected by the alleged unequal treatment of some DSP owners versus others.  Plaintiff cannot allege such facts, of course, because the DSP diversity grant program is not open to the general public, but rather only to DSP owners, which Plaintiff is not and has never applied to be.  For these reasons, Plaintiff lacks Article III standing, and her Complaint should be dismissed for lack of subject matter jurisdiction.

Plaintiff's Complaint should be dismissed also for failure to state a claim.  Plaintiff cannot allege, as she must, that her race was the but-for cause of her failure to receive a DSP diversity grant.  Because she admits she is not a DSP owner, she is *per se* ineligible for the diversity grant,

regardless of race.  That is, the but-for cause of her inability to obtain a grant given to certain DSP owners is that she is not a DSP owner in the first place.  She admits that she has not applied to become a DSP owner, and, in all events, it remains purely speculative as to whether she could have made it through the selection process—especially where she fails to allege that she would meet even the threshold requirements to become a DSP owner had she applied.

For each of the foregoing independent reasons, Plaintiff's Complaint should be dismissed.

## STATEMENT OF ISSUES

1. Does the Court lack subject-matter jurisdiction over Plaintiff's claim for violation of 42 U.S.C. § 1981 due to Plaintiff's lack of standing?

2. Does Plaintiff's Complaint contain sufficient facts to state a claim for violation of 42 U.S.C. § 1981 against Amazon?

## BACKGROUND

### I.      Facts and Allegations Pleaded in Complaint

On July 20, 2022, Plaintiff filed a Class-Action Complaint (Dkt. 1) against Amazon.  On December 15, 2022, Plaintiff filed her First Amended Class-Action Complaint (Dkt. 8) alleging that Amazon engaged in racial discrimination in violation of 42 U.S.C. § 1981.  FAC ¶ 35.  In particular, Plaintiff claims that Amazon discriminates against her and other "whites and Asian-Americans" in regards to its DSP Program's diversity grant.  *Id.* ¶ 8.  In support of that claim, Plaintiff alleges that:

- Amazon provides "a $10,000 bonus to 'Black, Latinx, and Native American entrepreneurs' who act as its delivery service partners, while withholding this stipend from Asian-Americans and whites who deliver Amazon packages" (*id.* at 1);

- Plaintiff "wishes to become an Amazon delivery service partner" (*id.* at ¶ 19);

- Plaintiff is "able and ready to apply" to become a DSP (*id.* at ¶¶ 19–20);

- Plaintiff is "white" and therefore "ineligible for the $10,000 stipend that Amazon awards to blacks, Latinos, and Native Americans" (*id.* at ¶ 22); and

- Plaintiff "cannot apply to become or become an Amazon delivery service partner without subjecting herself to racial discrimination" (*id.* at ¶ 23).

However, Plaintiff also represents that she "*will not apply* to become an Amazon delivery service partner until" Amazon eliminates its allegedly discriminatory policy, "either by extending its $10,000 benefit to whites and Asians or curtailing or eliminating the benefit entirely." *Id.* at ¶ 24 (emphasis added). Despite her refusal to apply to become a DSP owner, Plaintiff acknowledges more than once that being a DSP owner (not just a DSP applicant) is a threshold requirement for receiving the grant. *See id.* at 1 (alleging that the grant is provided to individuals "who act as [Amazon's] delivery service partners"); *id.* at ¶ 37(b) (seeking a declaration as to the illegality of Amazon's grant "that it provides to the black, Latino, and Native American contractors *in its delivery-service partners program*") (emphasis added).

## II.    Additional Facts Relevant to Amazon's Standing Challenge

Amazon's DSP Program was created in 2018. Declaration of Shereef John Mikhail ("Mikhail Decl."), Ex. A, at ¶ 3. The DSP Program provides an opportunity for people who are looking to run a full-time package-delivery business, have experience hiring and coaching teams, and are comfortable in a fast-paced, ever-changing environment. *See* Exhibit B, *Frequently Asked Questions*, Amazon, https://logistics.amazon.com/marketing/faq (last visited Jan. 31, 2023) (hereinafter "Ex. B") (Program details – What should I consider before applying to Amazon's Delivery Service (DSP) program?).[3]

---

[3] The description of and requirements for the DSP program are set forth in responses to Frequently Asked Questions on Amazon's publicly available website, https://logistics.amazon.com. The Complaint incorporates that website by reference, including by providing the website link and attaching portions of it as an exhibit. FAC ¶ 7 & Ex. 1, at 3. The Court thus can and should take judicial notice of and consider the FAQs, and related linked resources, for purposes of a facial attack on the pleadings. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). In addition, the Declaration of Shereef John Mikhail authenticates the FAQs, and related linked resources, and confirms that they accurately identify the requirements and application process for becoming a DSP. *See* Mikhail Decl., Ex. A, at ¶ 5. Alternatively, the Court should consider the additional facts regarding the DSP application process as a part of a factual challenge to Plaintiff's standing.

The application process to become a DSP owner is lengthy, competitive, and highly selective.  Mikhail Decl., Ex. A, at ¶ 4.  Individuals who wish to become DSP owners must be able recruit, hire, and coach a team of high-performing hourly employees, manage a fleet of delivery vehicles, and adapt to demand throughout the year.  *See* Exhibit C, *Frequently Asked Questions* (Program Brochure available under heading: Financials – How much start-up capital is required and are there any unexpected costs I should account for?) (hereinafter "Ex. C").  In 2021 alone, Amazon received about 21,000 DSP applications and accepted only about 650 applicants, an acceptance rate of about 3%.  Mikhail Decl., Ex. A, at ¶ 4.

Importantly, Amazon does not consider an applicant's race (or any other protected classification) or provide preferential treatment based on race in determining whom to accept as a DSP owner.  *Id.* at ¶ 12.  To apply to become a DSP owner, an individual must first submit an online application that provides information about previous work experience, leadership, financial health, community involvement, and geographic preferences.  *See* Ex. B (Application process – What are the steps involved in completing the application?).  For example, in its Tips for the Amazon Delivery Service Partner document, Amazon recommends that candidates update their resume to include and be prepared to address management experience and the size of the teams managed; experience managing a P&L statement or budget; experience recruiting, hiring, and on-boarding employees; and information about past promotions, successes with internal or external customers, and leadership in the community and how applicants might engage community connections to support their hiring plans.  Exhibit D, *Frequently Asked Questions* (Tip Sheet available under heading: Application Process – What screening criteria do you use in selecting DSP candidates?) (hereinafter "Ex. D").  In addition to the application, an individual must provide documentation demonstrating access to $30,000 in liquid assets, as well as pass a credit check,

background screening, and motor vehicle record check.   Ex. B (Application process – What screening criteria do you use in selecting DSP candidates?); *see also* Ex. D.

Those are baseline, threshold requirements that everyone must satisfy before one can become a DSP owner.  *See* Ex. D.  Even if an applicant satisfies those requirements, there are still several hurdles to becoming a DSP owner.

If selected to progress for further consideration, the applicant will be required to participate in a screening interview, and then a final round of interviews, where individuals will be required to submit business plans.  Mikhail Decl., Ex. A, at ¶ 8.  If an applicant successfully makes it through the final round of interviews, then the applicant will have the opportunity to discuss location and financials before a final decision is made.  *Id.* at ¶ 9.  If the applicant selects a geographic preference in which Amazon has an opening, then the applicant will be given an offer to become a DSP owner.  *Id.* at ¶ 10.  However, if the applicant selects a geographic preference in which Amazon does not have an opening, the applicant will be asked to join the Future DSP program, until an opening becomes available, and an offer can be made to become a DSP owner. *Id.* at ¶ 11.

In August 2020, Amazon launched the diversity grant program at issue here.[4]  The grant program is for *DSP owners only* and provides a monetary stipend of $10,000 to eligible Black/African American, Hispanic/Latinx, and/or Native American/Indigenous DSP owners. *Id.* at ¶¶ 13, 15.  Since the grant is provided to DSP owners, rather than to applicants, the $10,000 stipend has no effect on the application process for becoming a DSP owner and cannot be used to

---

[4] Since the development of the DSP program, Amazon has introduced a number of different assistance programs to provide additional help to certain individuals who qualify to become DSP owners.  For example, in 2020, Amazon implemented the Veteran's grant program which provided $10,000 grants to veterans who became DSP owners. Mikhail Decl., Ex. A, at ¶ 14.  Further, at the beginning of this year, Amazon created the Road to Ownership Program which provides $30,000 grants to eligible employees of DSPs who are selected for and successfully complete the Road to Ownership Program and become DSP owners. *Id.* at ¶ 16.

supplement and/or replace an applicant's requirement to prove access to $30,000 in liquid assets during the application process.  *Id.* at ¶ 17.  Rather, the grant is provided to eligible DSP owners to assist them with startup costs associated with launching a small business only after they have first become DSP owners.

## ARGUMENTS AND AUTHORITIES

**I.      The Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Standing.**

### A.      Legal Standards for Rule 12(b)(1) Dismissal for Lack of Standing

A complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss*., 143 F.3d 1006, 1010 (5th Cir. 1998).  For subject matter jurisdiction to exist under Article III of the Constitution, a plaintiff must establish standing to bring each cause of action she seeks to assert in federal court.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Xerox Corp. v. Genmoora Corp*., 888 F.2d 345, 350 (5th Cir. 1989) (noting that standing is a required element of subject matter jurisdiction and is therefore properly challenged on a Rule 12(b)(1) motion to dismiss).  The party asserting jurisdiction bears the burden of proving it.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack before addressing any attack on the merits."  *Palmer v. Paxton*, No. 4:15-CV-00657-ALM-CAN, 2016 WL 11472825, at *5 (E.D. Tex. Aug. 25, 2016), *report and recommendation adopted*, No. 4:15-CV-657, 2016 WL 5422793 (E.D. Tex. Sept. 29, 2016) (quoting *Ramming*, 281 F.3d at 161).

To satisfy standing under Article III, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision.  *Lujan*, 504 U.S. at 560–61.  To show injury-in-fact, a plaintiff must allege "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. 560.  "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not" show standing.  *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).  Thus, a plaintiff must "sufficiently differentiate[] [herself] from a general population of individuals affected in the abstract" by the policies or practices at issue.  *Id.* at 502.

A defendant may bring either a facial or factual attack under Rule 12(b)(1) to challenge a plaintiff's lack of standing.  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A facial attack is based on the sufficiency of the plaintiff's pleadings, whereas under a factual attack, the court examines whether there are facts outside the pleadings supporting or defeating standing.  *Id.*

Because a facial attack is based on the pleadings, courts analyze it under the same standards applicable to Rule 12(b)(6) motions.  *Gaylor v. Inland Am. McKinney Towne Crossing LP, LLC*, No. 4:13-CV-307, 2014 WL 1912388, at *2 (E.D. Tex. May 13, 2014) (granting motion to dismiss facial attack under Rule 12(b)(1)).  The court accepts as true plausible factual allegations but need not accept legal conclusions or bare assertions.  *Id.*; *see also Liverman v. McMurray*, No. 7:19-CV-00062-DC-RCG, 2019 WL 11660803, at *3 (W.D. Tex. Oct. 4, 2019), *report and recommendation adopted*, No. MO:19-CV-00062-DC, 2019 WL 11660802 (W.D. Tex. Oct. 25, 2019) (conclusory statements about injury are insufficient to establish standing).  In addition, the court may consider matters that are subject to judicial notice and/or incorporated by reference into

the complaint—here, portions of Amazon's publicly available website describing the DSP program and its requirements.  *See Funk*, 631 F.3d at 783; *supra* note 3.[5]

Under a factual attack, the defendant may submit "affidavits, testimony, or other evidentiary materials," and the plaintiff is similarly required to submit facts proving standing. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  In a factual challenge, "no presumptive truthfulness attaches to the [plaintiff's] jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).

Here, the Complaint can survive neither facial nor factual attack.  The Court can and should conclude based on the pleadings and matters subject to judicial notice that Plaintiff lacks standing to pursue her claims.  In the alternative, the Court may look at the factual evidence outside the pleadings and reach the same conclusion.  *See Rhodes v. U.S. Office of Special Counsel*, No. 3:05-CV-2402-K (BH), 2008 WL 2330576, at *3 (N.D. Tex. May 22, 2008), *report and recommendation adopted*, No. 3:05-CV-2402-K, 2008 WL 2330573 (N.D. Tex. June 3, 2008), *aff'd*, 303 F. Appx. 219 (5th Cir. 2008) (dismissing claims for lack of standing under facial and factual attacks).

### B.      Plaintiff Lacks Standing to Challenge Amazon's DSP Diversity Grant Program.

Plaintiff lacks standing because she does not, and cannot, plead facts demonstrating that she has suffered an injury-in-fact that is fairly traceable to Amazon's allegedly unequal treatment

---

[5] *See also, e.g., In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (permitting on motion to dismiss consideration of documents that "were referred to in the complaints" and were "central" to the claims at issue); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) (explaining that even under Rule 12(b)(6) standards, "[n]umerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.").

of DSP owners.  *Lujan*, 504 U.S. at 560–61.  Plaintiff attempts to manufacture an injury by alleging that she "wishes to become an Amazon delivery service partner," and is "'able and ready to apply.'"  FAC ¶ 19 (quoting *Carney*, 141 S. Ct. at 499–500, and *Gratz*, 539 U.S. at 261).  But those allegations do not demonstrate that Plaintiff has suffered an injury-in-fact sufficient to confer standing for two reasons.  First, even under her own framing of the standing inquiry—and despite the opportunity to amend her complaint—Plaintiff has failed to plead sufficient facts showing that she is "able and ready" to apply for the DSP program because she does not allege that she has taken any concrete steps to become a DSP owner or that she could meet the eligibility requirements for doing so.  Second, and in all events, Plaintiffs' alleged ability and readiness to apply for a DSP contract does not demonstrate an injury-in-fact because she fails to allege any discrimination in the DSP application process that would prevent her from competing on equal footing to become a DSP owner.  Instead, Plaintiff's complaint alleges discrimination *as between people who are DSP owners*, and she admits she is not a DSP owner and has not applied to become one.  FAC ¶¶ 19, 24.

Accordingly, there is no basis to plausibly infer that Plaintiff has been harmed, or is in imminent danger of being harmed, by Amazon's decision to provide diversity grants to some DSP owners but not others.  Plaintiff is simply a member "of the general population" who is affected only "in the abstract" by Amazon's grant program.  *Carney*, 141 S. Ct. at 501–02.  Where Plaintiff's cited case, *Carney*, held that an attorney lacked standing to claim discrimination in the process of becoming a judge (*id.*), Plaintiff's claim for standing is even more tenuous—she is more analogous to a person purportedly interested in being a judge but without alleging that she has even a law degree, much less the other attributes and qualifications for the position.

1.  **Plaintiffs' Allegations Are Insufficient to Show That She Is Able and Ready to Compete to Become a DSP Owner.**

Federal courts have routinely held that a plaintiff seeking to challenge the process for awarding a contract or benefit cannot establish an injury-in-fact by including mere conclusory allegations that she is "'able and ready'" to apply.  As the Court explained in *Carney*, "if . . . [a] few words of general intent . . . were sufficient [] to show an 'injury in fact,'" it would "significantly weaken the longstanding legal doctrine preventing [the] Court from providing advisory opinions at the request of one who, without other concrete injury, believes that the [defendant] is not following the law."  *Carney*, 141 S. Ct. at 501.  Rather, to establish an injury-in-fact, a plaintiff must show that she "took some actual steps that demonstrate a real interest in seeking the alleged benefit," *i.e.*, "*specific steps that would otherwise position*" her to obtain the contract or benefit but for the challenged practice.  *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 202–03, 207 (3rd Cir. 2021) (emphasis added) (holding that out-of-state doctor who allegedly intended to move to New Jersey lacked standing to challenge hospital policies restricting staff privileges where he had yet to take concrete steps necessary to make him eligible to practice in state); *see also Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1337 (11th Cir. 2019) (finding no injury-in-fact where plaintiff failed to allege any "concrete steps" to found a clinic "such as selecting a clinic location, securing a lease option, consulting with relevant government officials, applying for the necessary permits or certifications, or associating with potential clients").

The Ninth Circuit's decision in *Carroll v. Nakatani* is instructive.  There, the Court held that the plaintiff lacked standing to challenge a business loan program available only to native Hawaiians.  342 F.3d 934, 942–43 (9th Cir. 2003).  Although the plaintiff alleged that he was "able and ready" to apply for a loan—and had in fact filed a "symbolic," albeit incomplete, application—

he had failed to "formulate even a basic business plan, ha[d] no work history for the past 25 years, ha[d] not researched necessary business expenses such as rent or equipment, and ha[d] only a vague sense about the cost of [supplies]." *Id.* at 942.  As the Court explained, "[e]ven assuming [the plaintiff] had a legitimate intention to apply for a loan, *he ha[d] done essentially nothing to demonstrate that he is in a position to compete equally with other [] loan applicants*."  *Id.* (emphasis added); *see also Holman v. Vilsack*, 582 F. Supp. 3d 568, 575–79 (W.D. Tenn. 2022) (plaintiff lacked standing to challenge debt relief program that allowed "socially disadvantaged" farmers and ranchers to apply for new loans where plaintiff made no showing he was able and ready to apply).[6]

As in *Carroll*, Plaintiff here has "done essentially nothing to demonstrate that [s]he is in a position to compete" for a DSP contract.  *Carroll*, 342 F.3d at 942.  While her initial complaint included no specific factual allegations at all, her amended complaint provides only scant details on her background and desire to apply, including that she had "started and owned her own business selling insurance in the past," is enrolled in a vocational rehabilitation center and classes at the University of North Texas, and that she believes that the DSP Program is "an ideal opportunity for" her because it offers training and access to rental equipment.  FAC ¶¶ 20–21.  Those

---

[6] Unlike *Gratz* and other cases finding standing, this case does not involve a plaintiff who has applied in the past but was rejected or who has an established history of applying for similar contracts.  *See Gratz v. Bollinger*, 539 U.S. 244, 251 (2003) (concluding the plaintiff had standing where he had previously applied to the university); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 212 (1995) (holding a subcontractor challenging a race-based program for allocating contracts established standing by showing that it "bids on every guardrail project in Colorado," that the defendant is likely to request bids for contracts involving guardrail work "at least once per year in Colorado, and that the plaintiff is very likely to bid on each such contract"); *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 646 (N.D. Tex. 2021) (holding that Greer had standing because he was "able and ready to apply; he ha[d] prepared an application on behalf of his restaurant and is otherwise eligible to receive an RRF grant, but for the allegedly unconstitutional prioritization scheme preventing his application from being processed"); cf. *Gegenheimer v. Stevenson*, No. 1:16-CV-1270-RP, 2017 WL 2880867, at *3 (W.D. Tex. July 5, 2017) (finding no standing where plaintiff had never applied for position in the past).

allegations, however, fall far short of showing any actual preparation and eligibility to compete for acceptance into the DSP program.

As described above, becoming a DSP owner means running a full-time package-delivery business; it includes recruiting, hiring, and coaching a team of high-performing hourly employees, managing a fleet of delivery vehicles, and adapting to demand throughout the year.  *See* Ex. C. The DSP application requires "information about previous work experience, leadership, financial health, community involvement, and geographic preferences, as well as a credit check, background screening and motor vehicle record check," and "documentation demonstrating access to $30,000 in liquid assets" (which requirement is the same for everyone regardless of eligibility for the grant). *See* Ex. B.  And even beyond those threshold requirements, the applicant must pass multiple rounds of interviews and be applying for a region with available openings.  *Id.*

Plaintiff's alleged generalized interest in the program and allegation that she is enrolled in certain classes does not demonstrate that she was able and ready to apply for the program at the time she filed the lawsuit.  *See Carney*, 141 S. Ct. at 499 (plaintiff "bears the burden of establishing standing as of the time [s]he brought this lawsuit").  Plaintiff does not allege any specific, concrete steps toward preparing the application, such as reading the detailed information on Amazon's website or attending one of the webinars Amazon offers to interested potential applicants; identifying a territory where she would operate and whether Amazon had capacity in that area; or compiling the detailed financial and background information required for the application.  *See id.* at 499–501 (explaining that plaintiff "bears the burden of establishing standing as of the time he brought this lawsuit," and that a generalized intent to apply was insufficient "without reference to an anticipated timeframe," "without prior relevant conversations," and "without efforts to determine likely openings" or "other preparations or investigations").  Nor does Plaintiff allege

facts showing that she is even eligible to become a DSP owner, *i.e.*, that she could pass the credit check and background check, and that she has $30,000 in liquid assets.

Thus, notwithstanding the opportunity to amend, Plaintiff still has not alleged—presumably because she cannot allege—that she actually meets the requirements for the initial application, much less the full process to become a DSP owner.  Absent such allegations, Plaintiff is in the same position as the plaintiffs in *Ellison* and *Carroll*, who complained about allegedly discriminatory practices without showing specific steps necessary to make them eligible for the programs at issue.  *See Ellison*, 11 F.4th at 207–08 (analogizing that a student could not claim she was able and ready to apply for staff privileges where she had yet to enter medical school); *Carroll*, 342 F.3d at 942–43 (incomplete application insufficient to show that plaintiff was eligible for loan); *see also Pucket v. Hot Springs Sch. Dist. No. 23*-2, 526 F.3d 1151, 1161 (8th Cir. 2008) ("[I]f a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition.").  Because Plaintiff pleads no facts demonstrating that she is able and ready to compete to become a DSP owner or that she meets the eligibility requirements for doing so, she cannot establish an injury-in-fact and her Complaint must be dismissed for lack of standing.

## 2. Plaintiff Cannot Plead an Injury-in-Fact Because She Is Unaffected By Amazon's DSP Grant Program.

Even if Plaintiff could allege facts demonstrating that she is able and ready to compete to become a DSP owner, Plaintiff would still lack standing because she has not alleged any discrimination by Amazon in the DSP *application process* and she is wholly unaffected by Amazon's decision to provide grants to some DSP owners but not others.

Whether a plaintiff is "able and ready" to compete for a contract or benefit is relevant to the standing inquiry only where the plaintiff alleges that the competitive application process itself is allegedly discriminatory (such as a discriminatory bidding process for municipal contracts or a discriminatory process for university admissions). *See Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 664–66, 668 (1993); *Gratz*, 539 U.S. at 251. As the Supreme Court has explained, in such cases the "'injury in fact' is the inability to compete on an equal footing in the bidding process," and thus the plaintiff does not have to show that she would have been awarded the contract had she applied. *Ne. Florida Chapter*, 508 U.S. at 666 (emphasis added).

Here, Plaintiff does not allege that Amazon's race-neutral process for awarding DSP contracts discriminates against DSP *applicants* in any way. Indeed, if she can satisfy the eligibility requirements, Plaintiff can compete on "equal footing" with all other applicants—regardless of race—for admission to the DSP program. Plaintiffs' actual complaint is that, among those that Amazon *selects for entry* into the DSP program, it allegedly discriminates by providing a grant to *some DSP owners*, but not others. As demonstrated by Plaintiff's own allegations, the only population of people who are potentially eligible for the grants are DSP owners. FAC ¶ 8. And because Plaintiff is not a DSP owner (and has no imminent prospect of becoming one), she is unaffected by that conduct and has failed to plead an injury-in-fact sufficient to establish standing.

The Fifth Circuit's decision in *Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000), is highly instructive and provides a helpful roadmap as to when the "able and ready" standard does and does not apply. As pertinent here, female students who played club soccer sued their university alleging (1) failure to accommodate under Title IX by failing to field a varsity women's soccer team, and (2) unequal treatment between female and male varsity athletes in the

allocation of scholarships and other benefits.  *Id.* at 870–72.  As to the failure-to-accommodate claim, the Court applied the "able and ready" standard and found that students had standing because "the injury here results from the imposed barrier—the absence of a varsity team for a position on which a female student should be allowed to try out."  *Id.* at 871.  Nonetheless, *the students lacked standing to claim unequal treatment of female versus male varsity athletes because they were not actually within the affected group*: "'The treatment of participants in female varsity athletics has not impacted plaintiffs as they have not been female varsity athletes and therefore have not been discriminated against by any alleged treatment of LSU's female varsity athletes; therefore a change in said treatment would not impact plaintiffs.'" *Id.* at 872 & n.14 (quoting with approval district court's reasoning).

Likewise here, Plaintiff does not allege a discriminatory "barrier" to competing on equal footing for a DSP contract, but instead alleges unequal treatment solely amongst DSP owners, of which she is not and has not applied to become one.  As explained above, while Amazon offers a diversity grant to certain DSP owners, neither the grant nor race plays any role in the DSP application process itself.  *See supra* at pp. 5–7.  Thus, like the unequal treatment claim in *Pederson*, the relevant inquiry is not whether Plaintiff was able and ready to compete for a DSP contract, but whether she was affected by the alleged unequal treatment of those who are already DSP owners.  Because Plaintiff does not and cannot allege that she is a DSP owner, she cannot be affected by a policy that gives grants to some DSP owners but not others.

Moreover, it is purely speculative whether Plaintiff ever could become a DSP owner, regardless of whether the challenged grant program were changed or even eliminated.  As courts have held in other contexts, a plaintiff cannot show actual or imminent injury where an attenuated chain of events would need to occur before the plaintiff would be affected.  *See Warth v. Seldin*,

422 U.S. 490, 504–508 (1975) (plaintiffs lacked standing to challenge a town's exclusionary zoning practice where, despite their alleged desire to live in the town, they failed to plead facts showing "a substantial probability" that they would have been able to buy or lease a house, absent the challenged practices); *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1044 (5th Cir. 2022) (plaintiffs lacked standing for prospective challenge to district attorney's alleged practice of excluding black jurors because of "the combination of events that must occur before there would be an injury"); *Gohmert v. Pence*, 510 F. Supp.3d 435, 441 (E.D. Tex. 2021), *aff'd*, 832 Fed. Appx. 349 (5th Cir. 2021)(plaintiff lacked standing because his "alleged injury requires a series of hypothetical—but by no means certain—events").  That is the case here.

As shown above, becoming a DSP owner is a rigorous multi-step process.  In 2021 alone, Amazon received about 21,000 applications for the DSP Program and accepted only about 650 applicants.  Mikhail Decl., Ex. A, at ¶ 4.  This amounts to an acceptance rate of around 3%.  And it is only after an offer is made and accepted that an individual (who has become a DSP owner) can first become eligible to receive a grant.  Thus, Plaintiff's theory of future injury relies on a highly attenuated chain of possibilities that is too speculative to establish an actual or imminent injury, particularly where she fails to plead any facts showing her ability to satisfy numerous threshold application requirements.

It is axiomatic that a plaintiff cannot manufacture standing through allegations of harm to a group of which she is not a part (and in which she has shown no genuine interest) simply because she believes there has been a violation of the law.  *Carney*, 141 S. Ct. at 499 ("a plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public,' . . . 'no matter how sincere' or 'deeply committed' a plaintiff is to vindicating that general interest on behalf of the public.") (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706–07 (2013)); *Lujan*,

504 U.S. at 573–74 (collecting cases concluding that "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy").  But that is the entirety of Plaintiff's Complaint.  Thus, the Court should conclude, for any one of the reasons explained above, that she has not and cannot plead standing and should dismiss her Complaint with prejudice.[7]

## II.     The Complaint Should be Dismissed Because Plaintiff Fails to State a Claim Upon Which Relief May Be Granted.

Even if Plaintiff's conclusory allegations were sufficient to plead Article III standing, they are insufficient to show that racial discrimination was a but-for cause of Plaintiff suffering any injury, which is required to state a claim under Section 1981. This failure independently requires dismissal under Rule 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (articulating legal standard for Rule 12(b)(6) motion to dismiss); *see also supra* at p. 7 (same).

To state a Section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  Thus, the plaintiff "has the burden of pleading facts that, taken as true, permit the Court to infer that race was a but-for cause of [her] injury."  *Simmons v. Triton Elevator, LLC*, No. 3:19-CV-1206-B, 2020 WL 7770245, at *3 (N.D. Tex. Dec. 30, 2020) (internal quotation marks omitted).

---

[7] Plaintiff generally purports to have suffered an injury in the Eastern District of Texas.  However, the Complaint does not actually allege that any particular events took place in the Eastern District of Texas, aside from the vague implication that Plaintiff was injured while residing here.  If this Court agrees that Plaintiff has not suffered an injury in the Eastern District of Texas for the reasons discussed herein, then this Complaint is also subject to dismissal for improper venue under FRCP 12(b)(3).  *See Hamilton v. United Parcel Serv., Inc.*, No. 1:11-CV-240, 2012 WL 760714, at *6 (E.D. Tex. Feb. 13, 2012) (holding that venue is improper in the Eastern District of Texas because "the plaintiff has not alleged any event or omission which occurred in this district.").

Plaintiff cannot show that her race is a but-for cause of not receiving the diversity grant at issue because she is not a DSP owner, and only DSP owners are eligible for that grant.  The but-for cause of her not receiving a grant is that she is not a DSP owner, as opposed to anything related to her race.  Moreover, Plaintiff has not alleged any discrimination in the application process to become a DSP, and thus she cannot plausibly allege that there were any discriminatory barriers to her becoming a DSP as a prerequisite for being eligible for the grant.

Even if this situation were analogized to cases involving discrimination in an application process, Section 1981 cases have long required that the plaintiff demonstrate her *qualifications* for the position she sought—which Plaintiff has not done.  *See, e.g.*, *Adams v. Houston Cmty. Coll.*, No. CV H-22-1547, 2022 WL 4227260, at *1 (S.D. Tex. Sept. 12, 2022).  After all, when an applicant "lack[s] the qualifications to be hired," she "would not . . . be[] hired in any event" and therefore "suffer[s] no injury as a result of the alleged discriminatory practices."  *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403–04 & n.9 (1977).

This case law is consistent with the general principle that the plaintiff "must establish the loss of an actual, not speculative or prospective, contract interest," which requires "offer[ing] evidence of some tangible attempt to contract" that "was in some way thwarted" by the defendant.  *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751–52 (5th Cir. 2001); *see also id.* at 752 (quoting with approval *Henderson v. Jewel Food Stores, Inc.*, No. 96 C 3666, 1996 WL 617165, at *3 (N.D. Ill. Oct. 23, 1996): "[A] § 1981 claim must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase or receiving service after attempting to do so.").  "[M]erely alleg[ing] *possible* loss of *future* opportunities" to enter into a contract is not enough.  *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (emphasis in original).  Where the plaintiff "points to no contract that [s]he *bid on* and *failed to obtain* because

of racial animus," the claim must be dismissed.  *Smart v. Int'l Broth. of Elec. Workers, Loc. 702*, 315 F.3d 721, 726 (7th Cir. 2002) (emphases added).

Here, Plaintiff is not a DSP owner and fails to allege that she made any "tangible attempt" to become a DSP owner, or that she has the qualifications to become a DSP owner had she applied. Yet, as she recognizes, only those "who act as [Amazon] delivery service partners" can receive the diversity grant, FAC at 1; *see also id.* ¶ 37(b), and there are a series of threshold eligibility requirements, articulated in the website's FAQs, that any aspiring DSP owner must meet.[8]  *See* Ex. B; *see also* FAC ¶ 7, Dkt. No. 8-1 at 3 (providing link to FAQs).  Absent any allegation that she meets those requirements to become a DSP owner, or even applied at all, Plaintiff cannot show that she would have received a $10,000 grant but for the supposed discrimination.  *See Simmons*, 2020 WL 7770245, at *3 (dismissing Section 1981 claim when plaintiff failed to plead sufficient facts to show but-for causation).  Even if Amazon eliminated the alleged discrimination by permitting *any* DSP owner to receive a $10,000 grant, Plaintiff still would not have received one because she is not a DSP owner (and, based on her own allegations, is far-removed from becoming one).  FAC ¶¶ 19, 24. Plaintiff would have missed out no matter how broadly or narrowly Amazon awarded the grants.  And for the same reason, she cannot even benefit from the judicial relief she seeks in this case.

It follows that the purported discrimination played no causal role at all, much less a but-for causal role, in Plaintiff's failing to receive a grant.  *See Comcast Corp.*, 140 S. Ct. at 1019 (requiring plaintiff to plead but-for causation).  Because Plaintiff fails to state a claim upon which relief may be granted, the Court should dismiss.

---

[8] As explained above, this Court may consider the FAQs without converting the Rule 12(b)(6) motion to one for summary judgment. *See supra* n.3.

## <u>CONCLUSION</u>

For the foregoing reasons, Amazon respectfully requests that the Court grant Amazon's Motion to Dismiss and dismiss Plaintiff's First Amended Class-Action Complaint with prejudice. Amazon further respectfully requests such further relief to which it may be justly entitled.

Dated:  January 31, 2023

Respectfully Submitted,

BY: _/s/ Angela C. Zambrano_

Angela C. Zambrano, *Lead Attorney*
Texas Bar No. 24003157
angela.zambrano@sidley.com
Margaret Hope Allen
Texas Bar No. 24045397
margaret.allen@sidley.com
Natali Wyson
Texas Bar No. 24088689
nwyson@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400

David R. Carpenter
(*pro hac vice forthcoming*)
drcarpenter@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:     (213) 896-6000
Facsimile:     (213) 896-6600

_/s/ Deron R. Dacus_
Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Phone/Fax:     (903) 705-1117

*Attorneys for Defendant Amazon.com, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on January 31, 2023.

/s/ *Natali Wyson*
Natali Wyson