UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Crystal Bolduc**,<br><br>                    Plaintiff,<br><br>v.<br><br>**Amazon.com Inc.**,<br><br>                    Defendant. | Case No. 4:22-cv-615-ALM |

## SECOND AMENDED CLASS-ACTION COMPLAINT

Amazon.com enters into contracts with "delivery service partners" (DSPs) to bring packages to its patrons. It also engages in patently unlawful racial discrimination by providing a $10,000 bonus to "Black, Latinx, and Native American entrepreneurs" who participate its delivery-service-partners programs, while withholding this stipend from Asian-Americans and whites who own DSP businesses. Plaintiff Crystal Bolduc brings suit to enjoin Amazon.com from continuing these racially discriminatory practices.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

3. The Court has personal jurisdiction over the defendant because Amazon.com's contacts with the state of Texas satisfy the minimum-contacts standard, and Ms. Bolduc's claims against Amazon.com arise out of those contacts.

## PARTIES

4. Plaintiff Crystal Bolduc is a citizen of Texas who resides in Denton County.

5. Defendant Amazon.com Inc. is a corporation organized under the laws of Delaware. It may be served at 410 Terry Avenue North, Seattle, Washington 98109.

## STATEMENT OF FACTS

6. Amazon.com Inc. (Amazon) delivers packages to its patrons by entering into contracts with "delivery service partners."

7. Amazon allows individuals who want their companies to become delivery service partners to apply through its website. *See* https://logistics.amazon.com (last visited on February 21, 2023). A copy of this webpage is attached to the complaint as Exhibit 1.

8. Amazon discriminates against whites and Asian-Americans, and in favor of blacks, Latinos, and Native Americans, who want their companies to become delivery service partners. On its website, under the heading "Commitment to Diversity," Amazon says:

> We're proud to announce a Diversity Grant to help reduce the barriers to entry for Black, Latinx, and Native American entrepreneurs—a $1 million commitment toward funding startup costs, offering $10,000 for each qualified candidate to build their own businesses in the U.S. With the launch of this grant program, we're investing in building a future for diverse business owners to serve their communities. If interested, please complete the diversity questions in the Financial Details section of the Application.

Exhibit 1.

9. This means that companies owned by blacks, Latinos, or Native Americans receive a $10,000 stipend from Amazon to become delivery service partners, while companies owned by whites and Asian-Americans receive no such stipend and must foot the entire bill for their startup costs.

10. This is not the only instance of unlawful racial discrimination at Amazon. Amazon has also been operating a "Black Business Accelerator" program since June of 2021.

11. Amazon claims that this program is "dedicated to helping build sustainable diversity and provide growth opportunities for Black-owned businesses." Exhibit 2.

12. Amazon uses this program to engage in unlawful racial discrimination against non-black owned business and in favor of black-owned businesses that sell products through Amazon.

13. For example, Amazon uses this program to give black-owned businesses a "$500 credit to assist with start-up and operational costs for eligible newly-launched sellers." Exhibit 2. Non-black-owned businesses are ineligible for this credit.

14. Amazon also uses this program to give black-owned businesses "[a]dvertising credits to increase exposure" for their businesses. Exhibit 2. Non-black-owned businesses are ineligible for these advertising credits.

15. Amazon uses this program to give black-owned businesses "FREE imaging services for up to 50 products to help showcase [their] products." Exhibit 2. Non-black-owned businesses are ineligible for these free imaging services.

16. And Amazon uses this program to provide black-owned businesses with "cash grant opportunities for select sellers." Exhibit 2. Non-black-owned businesses are ineligible for these cash grant opportunities.

17. Amazon also uses this program to provide "business education, coaching, and mentorship," as well as "marketing and promotional support," to black-owned businesses that it refuses to provide non-black-owned businesses.

18. Details of this racially discriminatory program can be found on Amazon's website at: https://sell.amazon.com/programs/black-business-accelerator (last visited February 21, 2023).

19. Amazon asks all applicants to its delivery service program to identify their race in the financial-details portion of the application.

## FACTS RELATED TO MS. BOLDUC

20. Plaintiff Crystal Bolduc wishes to participate in Amazon's delivery-service-partner program, and she is "able and ready to apply." *See Carney v. Adams*, 141 S. Ct. 493, 499–500 (2020); *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003).

21. Ms. Bolduc is a 44-year-old entrepreneur and has started and owned her own business selling insurance in the past. Over the past five years, however, Ms. Bolduc was battling cancer and lived on disability-insurance payments. She is now fully recovered and eager to re-enter the workforce. Ms. Bolduc is currently enrolled in the vocational rehabilitation center of Texas, which is providing education and training so that Ms. Bolduc can resume her career as an entrepreneur. She is also enrolled at the University of North Texas and started classes there on January 7, 2023, to obtain the education needed to be successful in her future business.

22. Amazon's delivery service partner program presents an ideal opportunity for Ms. Bolduc to re-start her career as an entrepreneur. Amazon does not require its delivery service partners to hold any credentials or skills other than a high-school diploma. Amazon also offers business coaching and allows its delivery service partners to rent vehicles and needed capital directly from the company. Ms. Bolduc wants to own a delivery-service-partner company so that she can quickly jump-start her new business, and she intends to hire veterans and other people to work as drivers for her business once it becomes a delivery service partner. The $10,000 stipend that Amazon offers to some (though not all) of its delivery service partners would make the program even more attractive if Amazon did not selectively withhold this stipend from whites and Asians.

23. Ms. Bolduc first learned about Amazon's delivery service partner program in 2021 when she saw advertisements about work opportunities at Amazon. She first noticed Amazon's seller program and has opened an Amazon seller's account.

24. When Ms. Bolduc learned about Amazon's delivery service partner program, she decided that she wanted to apply. She has attended Amazon's introductory webinar for prospective delivery service partners, and she has watched all of the relevant videos and read all of the relevant materials on Amazon's website.

25. Ms. Bolduc has already started the online application process by filling in the first and second pages of the online application form. Ms. Bolduc has also gathered all of the financial and background information needed for the application. Her online application remains active, although she has not yet finalized or submitted it.

26. The only reason that Ms. Bolduc paused the online application process was because she learned that she would not be eligible for the $10,000 stipend that Amazon awards to some of its delivery service partners to offset their startup costs.

27. Ms. Bolduc meets each of the threshold eligibility requirements for an Amazon delivery service partner. She has access to at least $30,000 in liquid assets. Her credit score is excellent and consistently over 750. Her most recent credit score was 754. She has no debt apart from her home mortgage and car loan. She carries no credit-card debt or other high-interest debt. She is skilled and careful at handling her money and finances.

28. Ms. Bolduc would easily pass any background check of her character or driving record. She has never been in trouble with the law, and her driving record is spotless. She has never been in a car accident and never received a speeding ticket.

29. Even beyond these minimum threshold requirements, Ms. Bolduc is an exceptionally strong candidate for the delivery-service-partner program. Ms. Bolduc

would be accepted into the program if she were to complete the application and interview process, and a reasonable opportunity for further investigation or discovery is likely to confirm that.

30. Ms. Bolduc is a natural entrepreneur and a hands-on leader with rich and deep experience as a manager. Ms. Bolduc worked for Crossmark, which has a fleet of 200 vehicles, where she was responsible for the replacement of old vehicles and the procurement of new vehicles once they reached 70,000 miles. Ms. Bolduc also handled the necessary insurance, and responded to all accidents and injuries related to Crossmark's fleet of vehicles. Ms. Bolduc also managed two employees during her time at Crossmark.

31. Ms. Bolduc also worked for Charter Insurance, where she gained additional experience dealing with insurance claims. She also dealt extensively with customer service while working at Charter.

32. Ms. Bolduc has experience managing profit-and-loss statements, and she has excellent budgeting and financial skills.

33. Ms. Bolduc even has experience as a recruiter. She worked for Pinnacle as a recruiter and succeeded in getting one of its applicants hired by Frito Lay.

34. Ms. Bolduc interviews very well and has never interviewed for a job that she hasn't received an offer for. She has good people skills and has often been promoted into management by employers after starting in entry-level positions. She is a hard worker who has never quit at anything in her life, and she has beaten cancer despite a double mastectomy.

35. Ms. Bolduc has been taking marketing classes to further develop her skills as an entrepreneur, manager, and recruiter.

36. Ms. Bolduc is capable of performing all of the tasks required of a delivery service partner, such as recruiting, hiring, and coaching a team of hourly employees, managing a fleet of delivery vehicles, and adapting to demand throughout the year.

37. Ms. Bolduc is active in her community and known by everyone in her Caloma Creek neighborhood. She is active with Meals on Wheels, and she helps them deliver food to elderly people in her community.

38. Ms. Bolduc would be open to having her business serve as an Amazon delivery service partner in any location, although she was especially intrigued by the opening available in Fort Worth when she initially learned about the DSP program.

## FACTS RELATED TO STANDING

39. Because Ms. Bolduc is white, she is ineligible for the $10,000 stipend that Amazon awards to blacks, Latinos, and Native Americans to offset their startup costs.

40. Ms. Bolduc is suffering present-day injury in fact because: (1) Ms. Bolduc must pay $10,000 more to start a delivery-service-partner business because she is white rather than a member of the Amazon-preferred racial categories; (2) Ms. Bolduc's ineligibility to recoup the $10,000 in startup costs on account of her race makes her unwilling to apply to Amazon's delivery-service-partner program; (3) The $10,000 stipend that Amazon promises to companies owned by blacks, Latinos, and Native Americans places Ms. Bolduc at a competitive disadvantage in the application process by drawing in minority applicants who would otherwise sit out or pursue other career opportunities; (4) The black, Latino, and Native American applicants who will compete against Ms. Bolduc for acceptance into the DSP program have more credible applications because they will automatically have an extra $10,000 in startup capital if their companies become delivery service partners; and (5) Ms. Bolduc cannot apply to the DSP program or have her company become an Amazon delivery service partner without subjecting herself to racial discrimination.

41. Ms. Bolduc will not apply to the Amazon delivery-service-partner program until Amazon eliminates this racially discriminatory policy, either by extending its $10,000 benefit to whites and Asians or curtailing or eliminating the benefit entirely.

Ms. Bolduc, however, is prepared to apply immediately to the Amazon delivery-service-partner program and will apply if and when Amazon permanently revokes its racially discriminatory policies.

42. Ms. Bolduc needs a judicial declaration of her rights under 42 U.S.C. § 1981 and federal civil-rights law before she invests additional time and money into her efforts to become a delivery-service-partner business owner. *See* 28 U.S.C. § 2201(a); *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) ("The purpose of the Declaratory Judgment Act is to settle 'actual controversies' *before* they ripen into violations of law or breach of some contractual duty." (emphasis added) (citations and internal quotation marks omitted)).

43. Each of Ms. Bolduc's injuries is traceable to Amazon and its racially discriminatory policies, and they will be redressed by the damages and prospective relief sought in this lawsuit.

44. The injuries giving rise to Ms. Bolduc's claims occurred in the Eastern District of Texas, which gives this Court venue under 28 U.S.C. § 1391(b)(2).

## CLASS-ACTION ALLEGATIONS

45. Ms. Bolduc seeks to represent a class that consists of: All white and Asian individuals who stand "able and ready to apply" to Amazon's "delivery service partners" program, either now or in the future. Ms. Bolduc reserves the right to modify, narrow, or refine this class definition when she moves for class certification, if necessary to accommodate the requirements of Rule 23 or any objections that the defendant might raise to the proposed class definition.

46. Ms. Bolduc brings this class action under Rule 23(b)(2) and Rule 23(b)(3) of the federal rules of civil procedure.

47. The number of members in the class makes joinder of the individual class members impractical.

48. There are questions of law common to the class, such as whether the racially discriminatory stipend that Amazon offers only to blacks, Latinos, and Native Americans violates federal civil-rights laws, including 42 U.S.C. § 1981.

49. Ms. Bolduc's claims are typical of other members of the class, as each of the class members wishes to be free from racial discrimination when participating as an Amazon delivery service partner.

50. Ms. Bolduc adequately represents the interests of the class, and she has no interests antagonistic to the class.

51. A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

52. A class action is also appropriate under Rule 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CAUSE OF ACTION

53. 42 U.S.C. § 1981 prohibits Amazon from engaging in racial discrimination in the making and enforcement of contracts.

54. Amazon is violating 42 U.S.C. § 1981 by awarding $10,000 to its black, Latino, and Native American contractors, while withholding this benefit from its white and Asian contractors.

55. 42 U.S.C. § 1981 provides Ms. Bolduc with a private right of action to sue for both damages and prospective relief. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975).

56. Amazon's racially discriminatory contracting practices are the but-for cause of Ms. Bolduc's present-day and ongoing injuries. *See* paragraphs 40–41, *supra*.

## DEMAND FOR RELIEF

57. Ms. Bolduc respectfully requests that the court:

   a. certify the class described in paragraph 45;

   b. declare that Amazon is violating 42 U.S.C. § 1981 by excluding whites and Asian-Americans from the $10,000 stipend that it provides to the black, Latino, and Native American contractors in its delivery-service-partners program;

   c. enjoin Amazon from discriminating against or giving preferential treatment to any person or entity on account of race;

   d. award nominal and compensatory damages to Ms. Bolduc and the class;

   e. award costs and attorneys' fees;

   f. award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

Adam K. Mortara*
Illinois Bar No. 6282005
Lawfair LLC
125 South Wacker Drive, Suite 300
Chicago, Illinois 60606
(773) 750-7154
adam@mortaralaw.com

Gene P. Hamilton*
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

*/s/ Jonathan F. Mitchell*
Jonathan F. Mitchell
*Lead Attorney*
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

* admitted *pro hac vice*

Dated: February 21, 2023               *Counsel for Plaintiff*

## CERFICIATE OF CONSENT

I certify that I have conferred with counsel for the defendant and they have consented in writing to our filing of this second amended complaint. *See* Fed. R. Civ. P. 15(a)(2).

>                               /s/ Jonathan F. Mitchell
>                              Jonathan F. Mitchell
>                              *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I certify that on February 21, 2023, this document was served through CM/ECF upon:

Angela C. Zambrano
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
(214) 981-3405 (phone)
angela.zambrano@sidley.com

Deron R. Dacus
Texas Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117 (phone)
903-581-2543 (fax)
ddacus@dacusfirm.com

*Counsel for Defendant*

                                      /s/ Jonathan F. Mitchell
                                      Jonathan F. Mitchell
                                        *Counsel for Plaintiff*