**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

CRYSTAL BOLDUC,

               Plaintiff,

    vs.

AMAZON.COM INC.,

           Defendant.

Civil Action No. 4:22-cv-615-ALM

## <u>DEFENDANT AMAZON.COM, INC.'S RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF</u>

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES ................................................................................................ 3

BACKGROUND ............................................................................................................... 3

I.      Facts and Allegations Pleaded in the Complaint ................................................. 3

II.     Additional Facts Relevant to Standing ............................................................... 5

ARGUMENTS AND AUTHORITIES ............................................................................... 8

I.      The Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Standing ............................................................................ 8

   A.   Legal Standards for Rule 12(b)(1) Dismissal for Lack of Standing. ................... 8

   B.   Plaintiff Lacks Standing to Challenge Amazon's DSP Diversity Grant Program. ........... 11

      1.   Because Plaintiff Is Not a DSP Owner, She Is Unaffected By a Grant That Amazon Gives Some DSP Owners But Not Others. ............................................. 12

      2.   Because Plaintiff Has Voluntarily Chosen Not to Apply For a DSP Contract, Any Potential Injury is Not Actual or Imminent and Would Require a Series of Hypothetical Events to Occur ................................................... 13

      3.   Plaintiff's Attempts to Manufacture a "Present-Day Injury" Fail ........................ 17

II.     The Complaint Should be Dismissed Because Plaintiff Fails to State a Claim Upon Which Relief May Be Granted. ....................................................................... 21

CONCLUSION ................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adarand Constructors, Inc. v. Pena,*
515 U.S. 200 (1995).............................................................................................13

*Albuquerque Indian Rights v. Lujan,*
930 F.2d 49 (D.C. Cir. 1992)..............................................................................18

*Arpaio v. Obama,*
797 F.3d 11 (D.C. Cir. 2015)..............................................................................16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................................21

*Attala Cnty., Miss. Branch of NAACP v. Evans,*
37 F.4th 1038 (5th Cir. 2022) ............................................................................14

*Bruni v. Hughs,*
468 F. Supp. 3d 817 (S.D. Tex. 2020) ...............................................................16

*Carney v. Adams,*
141 S. Ct. 493 (2020).................................................................................. *passim*

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,*
140 S. Ct. 1009 (2020)........................................................................................22

*Davis v. Tarrant County,*
565 F.3d 214 (5th Cir. 2009) ..............................................................................18

*Ellison v. Am. Bd. of Orthopaedic Surgery,*
11 F.4th 200 (3d Cir. 2021) ..........................................................................14, 17

*Evans v. Tubbe,*
657 F.2d 661 (5th Cir. 1981) ..............................................................................10

*Grant ex rel. Family Eldercare v. Gilbert,*
324 F.3d 383 (5th Cir. 2003) ..............................................................................18

*Funk v. Stryker Corp.,*
631 F.3d 777 (5th Cir. 2011) ...........................................................................6, 10

*Gaylor v. Inland Am. McKinney Towne Crossing LP, LLC,*
No. 4:13-CV-307, 2014 WL 1912388 (E.D. Tex. May 13, 2014)..........................9

*Goberman v. Cascos*,
    No. 3:16-CV-0994-G (BH), 2016 WL 3688604 (N.D. Tex. June 12, 2016)..........................15

*Gohmert v. Pence*,
    510 F. Supp. 3d 435 (E.D. Tex. 2021), *aff'd*, 832 Fed. App'x. 349 (5th Cir.
    2021) ...............................................................................................................................14

*Gratz v. Bollinger*,
    539 U.S. 244 (2003)............................................................................................................11

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
    143 F.3d 1006 (5th Cir. 1998) ..............................................................................................8

*Hutchinson v. Pfeil*,
    211 F.3d 515 (10th Cir. 2000) ............................................................................................16

*Hyosung TNS Inc. v. Int'l Trade Comm'n*,
    926 F.3d 1353 (Fed. Cir. 2019)...........................................................................................16

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ..............................................................................................10

*Liverman v. McMurray*,
    No. 7:19-CV-00062-DC-RCG, 2019 WL 11660803 (W.D. Tex. Oct. 4, 2019) ....................10

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) ..............................................................................................19

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...................................................................................................... *passim*

*Madsen v. Boise State Univ.*,
    976 F.2d 1219 (9th Cir. 1992) ............................................................................................18

*Menchaca v. Chrysler Credit Corp.*,
    613 F.2d 507 (5th Cir. 1980) ................................................................................................9

*Morris v. Dillard Dep't Stores, Inc.*,
    277 F.3d 743 (5th Cir. 2001) ..............................................................................................22

*Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of
    Jacksonville, Fla.*, 508 U.S. 656 (1993) ..............................................................................13

*Palmer v. Paxton*,
    No. 4:15-CV-00657-ALM-CAN, 2016 WL 11472825 (E.D. Tex. Aug. 25,
    2016) .................................................................................................................................9

*Paterson v. Weinberger*,
 644 F.2d 521 (5th Cir. 1981) ........................................................................................10

*Pederson v. Louisiana State University*,
 213 F.3d 858 (5th Cir. 2000) ...................................................................................12, 13

*Phelps v. Wichita Eagle-Beacon*,
 886 F.2d 1262 (10th Cir. 1989) ...................................................................................22

*Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Cnty.*,
 205 F.3d 265 (5th Cir. 2000) ........................................................................................15

*Pucket v. Hot Springs Sch. Dist. No. 23-2*,
 526 F.3d 1151 (8th Cir. 2008) ................................................................................14, 17

*Ramming v. United States*,
 281 F.3d 158 (5th Cir. 2001) ..........................................................................................9

*Rhodes v. U.S. Office of Special Counsel*,
 No. 3:05-CV-2402-K (BH), 2008 WL 2330576 (N.D. Tex. May 22, 2008)...........................11

*Sea Shore Corp. v. Sullivan*,
 158 F.3d 51 (1st Cir. 1998)...........................................................................................16

*Simmons v. Triton Elevator, LLC*,
 No. 3:19-CV-1206-B, 2020 WL 7770245 (N.D. Tex. Dec. 30, 2020) ...................................22

*Smart v. Int'l Broth. of Elec. Workers, Loc. 702*,
 315 F.3d 721 (7th Cir. 2002) ........................................................................................22

*Trinity Indus., Inc. v. Martin*,
 963 F.2d 795 (5th Cir. 1992) ...................................................................................15, 20

*Warth v. Seldin*,
 422 U.S. 490 (1975).......................................................................................................14

*Xerox Corp. v. Genmoora Corp.*,
 888 F.2d 345 (5th Cir. 1989) ..........................................................................................8

**Statutes**

28 U.S.C. § 2201(a) .............................................................................................................19

42 U.S.C. § 1981........................................................................................................ *passim*

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
 § 1357 (3d ed. 2004) .................................................................................................10

Fed. R. Civ. P. 12(b)(1)..........................................................................................8, 9, 10

Fed. R. Civ. P. 12(b)(6).........................................................................................9, 10, 21

Defendant Amazon.com, Inc. ("Amazon") respectfully moves the Court to dismiss Plaintiff's Second Amended Class-Action Complaint ("SAC" or "Complaint") (Dkt. 15) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

To deliver packages in the communities it serves, Amazon partners with local businesses—called Delivery Service Partners, or DSPs—whose owners are responsible for hiring, training, and retaining a team of employee-drivers and managing a fleet of delivery vans. To be offered a DSP contract, individuals must (among other things) submit an application, meet certain eligibility requirements, pass an extensive interview and screening process, and be willing to operate their business in an area where Amazon needs additional capacity. Amazon's eligibility requirements are race-neutral and an applicant's race or ethnicity plays *no role whatsoever* in Amazon's process for selecting DSPs.[1] Amazon does, however, try to promote diversity within its DSP ranks by offering a $10,000 grant to new DSP owners who opt in and identify as members of certain minority groups.

In this lawsuit, Plaintiff Crystal Bolduc ("Plaintiff" or "Bolduc") alleges that Amazon's DSP diversity grant program violates 42 U.S.C. § 1981 by discriminating against white and Asian-American DSP owners on the basis of their race. Based on her own allegations, however, Plaintiff is not a DSP owner and has never even applied to become one. SAC ¶¶ 20, 41. Plaintiff therefore lacks Article III standing, because she cannot show an actual or imminent injury arising from the fact that Amazon offers a diversity grant to some DSP owners but not others. Indeed, Plaintiff's § 1981 claim is the epitome of an abstract and generalized grievance by a member of the general population about an internal corporate program that has no actual effect on her.

---

[1] *See* Declaration of Shereef John Mikhail ("Mikhail Decl."), Ex. A, ¶ 12.

Plaintiff attempts to plead the existence of an injury-in-fact by alleging that she "wishes to participate in Amazon's delivery service partner program," and that she would be "'able and ready to apply'" to become a DSP owner if Amazon's grant program were changed or eliminated.  SAC ¶ 20 (quoting *Carney v. Adams*, 141 S. Ct. 493, 499–500 (2020), and *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003)).  Those allegations are irrelevant because Plaintiff's claim is not premised on racial preferences in the DSP application process itself, and Plaintiff does not, and cannot, allege that she is on unequal footing because of her race (or otherwise) in competing to become a DSP owner.  The relevant inquiry here is whether Plaintiff has alleged facts showing that she was affected by the alleged unequal treatment of some DSP owners versus other DSP owners when she indisputably is not a DSP owner.  Plaintiff cannot allege such facts, of course, because the DSP diversity grant program is not open to the general public, but rather only to DSP owners, which Plaintiff is not and has never applied to be.

Moreover, even if it were true that Plaintiff meets the base qualifications for the DSP program and would be a "strong candidate" (as she contends), the prospect of her actually being selected as a DSP owner would still depend on an attenuated and highly uncertain chain of events. Indeed, the DSP application process is so rigorous and highly selective that since 2021 *less than 3% of applicants were accepted into the program.*  Even if Plaintiff made it all the way through the application and interview process, she may still only be admitted into the DSP program if, at that time, Amazon has an opening in the geographic area she selects.  Having voluntarily chosen *not* to apply at all, Plaintiff cannot plausibly plead that she is imminently likely to become a DSP owner, and unless and until that happens, she cannot plausibly be suffering any actual or imminent injury from the DSP grant program.  She is not entitled to an advisory opinion on the validity of

the DSP grant program based on the hypothetical possibility that she *might*, one day, be in the position to receive a DSP contract.

For similar reasons, Plaintiff's Complaint should be dismissed also for failure to state a claim.  Even if the Article III standing jurisprudence were expanded in the way Plaintiff seeks, § 1981 still requires that her race be the but-for cause of her failure to receive a DSP diversity grant.  Because she admits she is not a DSP owner, she is *per se* ineligible for the diversity grant, regardless of race.  The but-for cause of her inability to obtain a grant given to certain DSP owners is that she is not a DSP owner in the first place.  She admits that she has not applied to become a DSP owner, and it remains purely speculative as to whether she would ever be offered a contract.  Under the case law, that is fatal to her claim.

For each of the foregoing independent reasons, Plaintiff's Complaint should be dismissed.  Further, because Plaintiff has already had multiple opportunities to amend and has no ability to cure these defects, the Complaint should be dismissed with prejudice.

## STATEMENT OF ISSUES

1. Does the Court lack subject-matter jurisdiction over Plaintiff's claim for violation of 42 U.S.C. § 1981 due to Plaintiff's lack of standing?

2. Does Plaintiff's Complaint contain sufficient facts to state a claim for violation of 42 U.S.C. § 1981 against Amazon?

## BACKGROUND

### I.    Facts and Allegations Pleaded in the Complaint

On July 20, 2022, Plaintiff filed a Class-Action Complaint (Dkt. 1) (hereinafter "OC") against Amazon, and she has since amended her complaint twice.  On December 15, 2022, Plaintiff filed her First Amended Class-Action Complaint (Dkt. 8) (hereinafter "FAC"), and on February 21, 2023, Plaintiff filed her Second Amended Class-Action Complaint (Dkt. 15) (hereinafter "Complaint" or "SAC").  The theory of liability in each is the same—that Amazon has allegedly

engaged in racial discrimination in violation of 42 U.S.C. § 1981 by providing "a $10,000 bonus to 'Black, Latinx, and Native American entrepreneurs' who participate [in Amazon's] delivery-service-partners programs, while withholding this stipend from Asian-Americans and whites who own DSP businesses."  OC at 1, ¶¶ 7, 25; FAC at 1, ¶¶ 8, 35; SAC at 1, ¶¶ 8, 54.

The main differences in the complaints pertain to Plaintiff's standing allegations.[2]  The original complaint contained only a conclusory allegation that Plaintiff was "able and ready to apply" for the DSP program, without any supporting, much less plausible, factual allegations.  OC ¶ 18.  The First Amended Complaint contained some further allegations about her personal experience and alleged interest in becoming a DSP owner.  FAC ¶¶ 20-21.  In response to Amazon's Motion to Dismiss filed on January 31, 2023, Plaintiff amended yet again, and now the Complaint presumably contains all factual allegations and theories that Plaintiff could muster in support of her alleged right to bring this suit.  Those allegations include the following (among others discussed further below):

> Plaintiff "wishes to participate in Amazon's delivery-service partner program" (SAC ¶ 20);
>
> Plaintiff is "able and ready to apply" to become a DSP (*id.* ¶ 20; *see also id.* ¶¶ 21-22);
>
> Plaintiff "has already started the online application process," which "remains active," and has "gathered all of the financial and background information needed for the application" (*id.* ¶ 25);
>
> Plaintiff "meets each of the threshold eligibility requirements for an Amazon delivery service partner" (*id.* ¶ 27);
>
> Plaintiff "is an exceptionally strong candidate for the delivery-service-partner program" based on personal history and experience (*id* ¶ 29; *see also id.* ¶¶ 30-37);

---

[2] Plaintiff has amended her class action allegations also, although those allegations too remain defective for the reasons stated in Amazon's concurrently filed motion to strike.

Plaintiff is "white" and therefore "ineligible for the $10,000 stipend that Amazon awards to blacks, Latinos, and Native Americans" (*id.* ¶ 39); and

Plaintiff "cannot apply to the DSP Program or have her company become an Amazon delivery service partner without subjecting herself to racial discrimination" (*id.* ¶ 40).

However, Plaintiff also represents that she "*will not apply* to the Amazon delivery-service-partner program until" Amazon eliminates its allegedly discriminatory policy, "either by extending its $10,000 benefit to whites and Asians or curtailing or eliminating the benefit entirely." *Id.* ¶ 41 (emphasis added). Despite her refusal to apply to become a DSP owner, Plaintiff acknowledges more than once that being a DSP owner (not just a DSP applicant) is a threshold requirement for receiving the grant. *See id.* at 1 (alleging that the grant is provided to individuals "who own DSP businesses"); *id.* ¶ 57(b) (seeking a remedy on the ground that Amazon's DSP grant is available to only "black, Latino, and Native American contractors *in its delivery-service partners program*") (emphasis added).

## II.    Additional Facts Relevant to Standing

Amazon's DSP Program was created in 2018. Mikhail Decl., Ex. A, ¶ 3. The DSP Program provides an opportunity for people who are looking to own and operate a full-time package-delivery business, have experience hiring and coaching teams, and are comfortable in a fast-paced, ever-changing environment. *See* Exhibit B, *Frequently Asked Questions*, Amazon, https://logistics.amazon.com/marketing/faq (last visited Mar. 23, 2023) (hereinafter "Ex. B") (Program details – What should I consider before applying to Amazon's Delivery Service (DSP) program?).[3]

---

[3] The description of and requirements for the DSP program are set forth in responses to Frequently Asked Questions on Amazon's publicly available website, https://logistics.amazon.com. The Complaint incorporates that website by reference, including by providing the website link and attaching portions of it as an exhibit. SAC ¶ 7 & Ex. 1, at 3. The Court thus can and should take judicial notice of and consider the FAQs, and related linked resources, for purposes of a facial

The application process is lenthly, competitive, and highly selective.  Mikhail Decl., Ex. A, ¶ 4.  Individuals who wish to become DSP owners must be able recruit, hire, and coach a team of high-performing hourly employees, manage a fleet of delivery vehicles, and adapt to demand throughout the year.  *See* Exhibit C, *Frequently Asked Questions* (Program Brochure available under heading: Financials – How much start-up capital is required and are there any unexpected costs I should account for?) (hereinafter "Ex. C").  In 2021, Amazon received about 21,000 DSP applications and accepted only about 650 applicants into the DSP Program, an acceptance rate of about 3%.  Mikhail Decl., Ex. A, ¶ 4.  Likewise, in 2022, Amazon received about 12,000 DSP applications and accepted only about 190 applicants into the DSP Program, an acceptance rate of about 1.6%.  *Id.*

Amazon does not consider, much less provide preferential treatment based on, race or any other protected classification in determining whom to accept as a DSP owner.  *Id.* ¶ 12.  To apply to become a DSP owner, an individual must first submit an online application that provides information about previous work experience, leadership experience, financial health, and community involvement.  *See* Ex. B (Application process – What are the steps involved in completing the application?).  For example, in its Tips for the Amazon Delivery Service Partner document, Amazon recommends that candidates update their resumes to include and be prepared to address management experience and the size of the teams managed; experience managing a P&L statement or budget; experience recruiting, hiring, and on-boarding employees; and information about past promotions, successes with internal or external customers, and leadership

---

attack on the pleadings.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).  In addition, the Declaration of Shereef John Mikhail authenticates the FAQs, and related linked resources, and confirms that they accurately identify the requirements and application process for becoming a DSP owner.  *See* Mikhail Decl., Ex. A, ¶ 5.  Alternatively, the Court should consider the additional facts regarding the DSP application process as a part of a factual challenge to Plaintiff's standing.

in the community and how applicants might engage community connections to support their hiring plans.  Exhibit D, *Frequently Asked Questions* (Tip Sheet available under heading: Application Process – What screening criteria do you use in selecting DSP candidates?) (hereinafter "Ex. D"). The online application also requires the selection of the applicants' preferred geographic location where they would seek to operate as DSP owners if ultimately selected.  Mikhail Decl., Ex. A, ¶ 6.  In addition to the application, an individual must provide documentation demonstrating access to $30,000 in liquid assets, as well as pass a credit check, background screening, and motor vehicle record check.  Ex. B (Application process – What screening criteria do you use in selecting DSP candidates?); *see also* Ex. D.

Those are simply the baseline, threshold requirements that one must satisfy to be considered for the DSP program.  *See* Ex. D.  Even if an applicant satisfies those requirements, there are still several hurdles to becoming a DSP owner.  If selected to progress for further consideration, the applicant will be required to participate in a screening interview, and then a final round of interviews, where individuals will be required to submit business plans.  Mikhail Decl., Ex. A, ¶ 8.  If an applicant successfully makes it through the final round of interviews, then the applicant will have the opportunity to discuss location and financials before a final decision is made.  *Id.* ¶ 9.  If the applicant selected a geographic preference in which Amazon has an opening, then the applicant will be given an offer to become a DSP owner.  *Id.* ¶ 10.  However, if the applicant selected a geographic preference in which Amazon does not have an opening, the applicant will be asked to join the Future DSP program, until an opening becomes available, and an offer can be made to become a DSP owner.  *Id.* ¶ 12.  Acceptance into the Future DSP program does not guarantee an applicant will become a DSP owner; some participants in the Future DSP program may never become DSP owners.  *Id.*

In August 2020, Amazon launched the diversity grant program, which is one of several assistance programs that Amazon offers DSP owners.[4]  The diversity grant program is for *DSP owners only* and provides a monetary stipend of $10,000 to eligible Black/African American, Hispanic/Latinx, and/or Native American/Indigenous DSP owners.  *Id.* ¶¶ 13, 15.  Since the grant is provided to DSP owners, rather than to applicants, the $10,000 stipend has no effect on the application process for becoming a DSP owner and cannot be used to supplement and/or replace an applicant's requirement to prove access to $30,000 in liquid assets during the application process.  *Id.* ¶ 17.  Rather, the grant is provided to eligible DSP owners to assist them with start-up costs associated with launching a small business only after they have first become DSP owners. *Id.* ¶ 18.  Further, applicants who are asked to join the Future DSP program are ineligible for the grant program until and unless they actually launch as DSP owners.  *Id.*

## ARGUMENTS AND AUTHORITIES

**I.      The Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Lacks Standing.**

### A.      Legal Standards for Rule 12(b)(1) Dismissal for Lack of Standing.

A complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss*., 143 F.3d 1006, 1010 (5th Cir. 1998).  For subject matter jurisdiction to exist under Article III of the Constitution, a plaintiff in federal court must establish standing to bring each proposed cause of action.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Xerox Corp. v. Genmoora Corp*., 888 F.2d 345, 350 (5th Cir. 1989) (noting that

---

[4]  For example, in 2020, Amazon implemented the Veteran's grant program which provided $10,000 grants to veterans who became DSP owners.  Mikhail Decl., Ex. A, at ¶ 14.  Further, in 2022, Amazon created the Road to Ownership Program which provides $30,000 grants to eligible employees of DSPs who are selected for and successfully complete the Road to Ownership Program and become DSP owners. *Id.* at ¶ 16.

standing is a required element of subject matter jurisdiction and is therefore properly challenged on a Rule 12(b)(1) motion to dismiss.  The party asserting jurisdiction bears the burden of proving it.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack before addressing any attack on the merits."  *Palmer v. Paxton*, No. 4:15-CV-00657-ALM-CAN, 2016 WL 11472825, at *5 (E.D. Tex. Aug. 25, 2016), *report and recommendation adopted*, No. 4:15-CV-657, 2016 WL 5422793 (E.D. Tex. Sept. 29, 2016) (quoting *Ramming*, 281 F.3d at 161).

To satisfy standing under Article III, a plaintiff must have (1) suffered an injury-in-fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision.  *Lujan*, 504 U.S. at 560–61.  To show injury-in-fact, a plaintiff must allege "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id*. 560.  "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law" is insufficient.  *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).  Thus, a plaintiff must be "sufficiently differentiated . . . from a general population of individuals affected in the abstract" by the policies or practices at issue.  *Id.* at 502.

A defendant may bring either a facial or factual attack under Rule 12(b)(1) to challenge a plaintiff's lack of standing.  *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir. 1980).  A facial attack is based on the sufficiency of the plaintiff's pleadings, while a factual attack allows the Court to consider whether there are facts outside of the pleadings defeating standing.  *Id*.

Because a facial attack is based on the pleadings, courts analyze it under the same standards applicable to Rule 12(b)(6) motions.  *Gaylor v. Inland Am. McKinney Towne Crossing LP, LLC*,

No. 4:13-CV-307, 2014 WL 1912388, at *2 (E.D. Tex. May 13, 2014) (granting motion to dismiss facial attack under Rule 12(b)(1)).  The court accepts as true plausible factual allegations but need not accept legal conclusions or bare assertions.  *Id.*; *see also Liverman v. McMurray*, No. 7:19-CV-00062-DC-RCG, 2019 WL 11660803, at *3 (W.D. Tex. Oct. 4, 2019), *report and recommendation adopted*, No. MO:19-CV-00062-DC, 2019 WL 11660802 (W.D. Tex. Oct. 25, 2019) (conclusory statements about injury are insufficient to establish standing).  In addition, the court may consider matters that are subject to judicial notice and/or incorporated by reference into the complaint—here, portions of Amazon's publicly available website describing the DSP program and its requirements.  *See Funk*, 631 F.3d at 783; *supra* note 3.[5]

Under a factual attack, the defendant may submit "affidavits, testimony, or other evidentiary materials," and the plaintiff is similarly required to submit facts proving standing.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).   In a factual challenge, "no presumptive truthfulness attaches to the [plaintiff's] jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).

Here, the Complaint can survive neither a facial nor a factual attack.  The Court can and should conclude based on the pleadings and matters subject to judicial notice that Plaintiff lacks standing to pursue her claims.  In the alternative, the Court may look at the factual evidence outside

---

[5] *See also, e.g., In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (permitting on motion to dismiss consideration of documents that "were referred to in the complaints" and were "central" to the claims at issue); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) (explaining that even under Rule 12(b)(6) standards, "[n]umerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment").

the pleadings and reach the same conclusion.  *See Rhodes v. U.S. Office of Special Counsel*, No. 3:05-CV-2402-K (BH), 2008 WL 2330576, at *3 (N.D. Tex. May 22, 2008), *report and recommendation adopted*, No. 3:05-CV-2402-K, 2008 WL 2330573 (N.D. Tex. June 3, 2008), *aff'd*, 303 F. App'x. 219 (5th Cir. 2008) (dismissing claims for lack of standing under facial and factual attacks).

> ### B. Plaintiff Lacks Standing to Challenge Amazon's DSP Diversity Grant Program.

Plaintiff lacks standing because she does not, and cannot, plead facts demonstrating that she has suffered an injury-in-fact that is fairly traceable to Amazon's allegedly unequal treatment of DSP owners.  *Lujan*, 504 U.S. at 560–61.  Plaintiff attempts to manufacture an injury by alleging that she "wishes to participate in Amazon's delivery-service-partner program" and is "'able and ready to apply.'"  SAC ¶ 20 (quoting *Carney*, 141 S. Ct. at 499–500, and *Gratz*, 539 U.S. at 261).  But Plaintiff's claims are not premised on any racial preference in the DSP *application process*.  Instead, Plaintiff's complaint alleges discrimination *as between people who are already DSP owners*.  Because she is not a DSP owner, she is not within the affected population and lacks standing.  SAC ¶¶ 20, 41.

While Plaintiff asserts confidence that she "would be accepted into the program if she were to complete the application and interview process," *id.* ¶ 29, the Court can disregard such speculative predictions about the future even on a facial challenge.  Given Amazon's rigorous, multi-step process for selecting DSPs, Plaintiff cannot plausibly plead that it is either likely or imminent that she would be accepted to the program—a necessary precondition to receiving any grant—particularly when she has voluntarily chosen *not* to apply.  It is notable that Plaintiff is unwilling to invest her time into the application process to become a DSP owner and yet is willing to invest her time and money into a lawsuit to litigate a grant program offered only to DSP owners.

That position runs contrary to the principles of standing, and her attempts to excuse her voluntary refusal to apply and otherwise to assert a "present-day injury" (*id.* ¶¶ 40, 42) likewise fail.

### 1. Because Plaintiff Is Not a DSP Owner, She Is Unaffected By a Grant That Amazon Gives Some DSP Owners But Not Others.

The Fifth Circuit's decision in *Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000), provides a helpful roadmap as to when the "able and ready" standard applies, and why Plaintiff's "able and ready" allegations are immaterial. There, female students who played club soccer sued their university alleging (1) failure to accommodate under Title IX by failing to field a varsity women's soccer team, and (2) unequal treatment between female and male varsity athletes in the allocation of scholarships and other benefits. *Id.* at 870–72. The Court found that the club soccer players had standing to assert the first claim but not the second. The Court's reasoning demonstrates why Plaintiff lacks standing here.

As to the failure-to-accommodate claim, the Court applied the "able and ready" standard, analogizing to equal protection cases involving set-aside programs where "the 'injury in fact' is the inability to compete on an equal footing in the bidding process." *Id.* at 871 (quoting *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 668 (1993)). The Court found that the students had standing for that claim because "the injury here results from the imposed barrier—the absence of a varsity team for a position on which a female student should be allowed to try out." *Id.*

Nonetheless, the students lacked standing to claim unequal treatment of female versus male varsity athletes because they were not actually within the affected group, i.e., they were not varsity athletes. *Id.* at 872. "'The treatment of participants in female varsity athletics has not impacted plaintiffs as they have not been female varsity athletes and therefore have not been discriminated

against by any alleged treatment of LSU's female varsity athletes; therefore a change in said treatment would not impact plaintiffs.'" *Id.* n.14 (quoting with approval district court's reasoning).

Just like the claim of unequal treatment of varsity athletes in *Pederson*, Plaintiff alleges the unequal treatment of some DSP owners compared to others based on race. The gravamen of the complaint is Plaintiff's inability to obtain *the grant*—not a barrier in the DSP application process (which is race-neutral). Yet, as demonstrated by Plaintiff's own allegations, the only population of people who are potentially eligible for the grants are DSP owners. SAC ¶ 8. Because Plaintiff is not a DSP owner, she cannot have been affected by the challenged conduct and cannot now plead an injury-in-fact sufficient to establish standing.

### 2. Because Plaintiff Has Voluntarily Chosen Not to Apply For a DSP Contract, Any Potential Injury is Not Actual or Imminent and Would Require a Series of Hypothetical Events to Occur.

Even if there were a situation wherein a hypothetical DSP applicant could articulate some injury-in-fact as a result of the DSP diversity grant program, the alleged injury in this case is far too remote and would require a radical expansion of standing jurisprudence. The Supreme Court has consistently held that an injury-in-fact must be actual or imminent. *Carney*, 141 S. Ct. at 498; *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995); *Ne. Florida Chapter*, 508 U.S. at 663; *Lujan*, 504 U.S. at 560. Although Plaintiff alleges that she would be a "strong candidate" *if* she applied, she has chosen *not* to apply, and the possibility that she would ultimately become a DSP owner (as a precondition for receiving any grant) depends on a highly attenuated series of hypothetical events. Accordingly, even if there were DSP applicants who progressed far enough in the application process to allege an imminent injury, Plaintiff is not one of them.

As the Supreme Court has explained, the concept of imminent injury is "stretched beyond the breaking point" when the potential injury would only occur at some point in the future, "and the acts necessary to make the injury happen are at least partly within the plaintiff's own control."

*Lujan*, 504 U.S. at 564 n.2.  "In such circumstances, we have insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Id.*  Consistent with this principle, courts have explained that, "if a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition." *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1161 (8th Cir. 2008); *see also Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 202–03, 207 (3d Cir. 2021) (holding that doctor lacked standing to challenge policy for granting hospital staffing privileges, where doctor had not yet taken the "specific steps that would otherwise position him to practice at those hospitals, such as obtaining a license to practice medicine in New Jersey").

Indeed, courts have held in numerous other contexts that a plaintiff cannot show an actual or imminent injury where an attenuated chain of events would need to occur before the plaintiff would be affected.  *See Warth v. Seldin*, 422 U.S. 490, 504–08 (1975) (plaintiffs lacked standing to challenge a town's exclusionary zoning practice where, despite their alleged desire to live in the town, they failed to plead facts showing "a substantial probability" that they would have been able to buy or lease a house, absent the challenged practices); *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1044 (5th Cir. 2022) (plaintiffs lacked standing for prospective challenge to district attorney's alleged practice of excluding black jurors because given "the combination of events that must occur before there would be an injury," where plaintiff had not yet been called for jury service in a case before that same district attorney); *Gohmert v. Pence*, 510 F. Supp. 3d 435, 441 (E.D. Tex. 2021), *aff'd*, 832 Fed. App'x. 349 (5th Cir. 2021) (plaintiff lacked standing because his "alleged injury requires a series of hypothetical—but by no means certain—events");

*Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Cnty.*, 205 F.3d 265, 268 (5th Cir. 2000) (dismissing claim where the "injury from th[e] ordinance depend[ed] on the occurrence of a number of uncertain events"); *Trinity Indus., Inc. v. Martin*, , 963 F.2d 795, 799 (5th Cir. 1992) ("The possibility, that maybe, in the future, if a series of events occur, [the plaintiff] . . .  might suffer some injury is clearly too impalpable to satisfy the requirements of Art. III." (cleaned up)); *Goberman v. Cascos*, No. 3:16-CV-0994-G (BH), 2016 WL 3688604, at *1 (N.D. Tex. June 12, 2016) (plaintiff lacked standing because he had neither registered to vote nor filed an application to run for public office and therefore "predicting [his] future injury is not just highly speculative, [its] not possible").

Here, as explained above, the critical precondition for receiving any grant is becoming a DSP owner.  Thus, for Plaintiff's alleged injury to occur, not only would she have to complete the online application and meet the minimum threshold requirements of the DSP application process, but she would need to pass a screening interview, prepare and submit a business plan, and then pass a final round of interviews.  She would have also needed to have selected a geographic preference in her application in an area where Amazon needs additional capacity.  As shown above, the selection process is rigorous; in 2022 alone, Amazon accepted only about 190 out of 12,000 applications for the DSP Program—an acceptance rate of around 1.6%.  Mikhail Decl., Ex. A, ¶ 4.  And again, it is only after an offer to become a DSP owner is made and accepted that the DSP owner can become eligible to receive a grant.

Even if the Court accepts as true Plaintiff's allegations that she meets the minimum threshold requirements and would make a "strong candidate," Plaintiff cannot *factually* allege that she would succeed during the interview stages.  To the contrary, she has not completed even the first step in that process.  Although Plaintiff confidently asserts that she "would be accepted into

the program if she were to complete the application and interview process" (SAC ¶ 29), such bare assertions and conclusory speculations about the future are not accepted as true, even on a motion to dismiss. *See Bruni v. Hughs*, 468 F. Supp. 3d 817, 824 (S.D. Tex. 2020) ("At the pleading stage, when considering any chain of allegations for standing purposes, the Court may reject as overly speculative those links which are predictions of future events." (internal quotation marks omitted)).[6]

Similarly, it is purely speculative as to whether there would be openings in an appropriate location for her to receive and accept an offer for a DSP contract. Plaintiff does not allege openings in the area where she resides, and so even if she were to complete the application process and succeed during the interview process, she at most would be asked to join the Future DSP program, which still would not guarantee that she would ever become a DSP owner. Mikhail Decl., Ex. A, ¶ 11. Plaintiff's only allegations on this issue are that she would be "open" to "any location" and that she was "intrigued" about an opening in Fort Worth posted in 2021 (two years ago). Even under the "able and ready" case law, these "words of general intent" are insufficient, *Carney*, 141 S. Ct. at 501, as they show neither that Amazon would be willing to offer her a position in a location to which she has no connection, or that she in fact would be able and ready to move to and start a business in that new city or state.

---

[6] *See also Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) ("[W]e treat allegations that are really predictions differently. When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties), as well as predictions of future injury that are not normally susceptible of labelling as true or false." (internal quotation marks and citations omitted)); *Hutchinson v. Pfeil*, 211 F.3d 515, 521 (10th Cir. 2000) (similar); *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 56 (1st Cir. 1998) (similar); *Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1358 (Fed. Cir. 2019) (similar).

Indeed, even if this case were viewed through the "able and ready" lens, the relevant inquiry is not whether Plaintiff is positioned to apply to be a *DSP owner*; it is whether she meets the preconditions for receiving *the grant* but for her race. She is not and will not be "able and ready" to receive the grant unless she first meets the preconditions of passing through the (race-neutral) DSP selection process and otherwise completing all steps necessary to position herself for a DSP contract offer. *See Pucket*, 526 F.3d at 1161; *Ellison*, 11 F.4th at 202–03, 207.

Under the circumstances, there is no "immediacy" to Plaintiff even becoming a DSP owner. *Lujan*, 504 U.S. at 564 n.2. There is thus no imminent risk of Plaintiff being denied a grant due to her race. The Court is thus faced with the undeniable "possibility of deciding a case in which no injury would have occurred at all." *Id.*; *see also Carney*, 141 S. Ct. at 501 (rejecting theory of standing that would "significantly weaken the longstanding legal doctrine preventing [the] Court from providing advisory opinions at the request of one who, without other concrete injury, believes that the [defendant] is not following the law").

### 3.    Plaintiff's Attempts to Manufacture a "Present-Day Injury" Fail.

Plaintiff tries to plead around the fact that she is not and imminently will not be a DSP owner by arguing various ways in which she is purportedly suffering a "present-day injury" in fact. SAC ¶¶ 40, 42. Those arguments fail.

**Plaintiff cannot excuse her own voluntary decision not to apply**. Plaintiff contends that she is injured because she wants to apply to be a DSP owner, but is "unwilling" or "cannot apply" if doing so would subject her to racial discrimination, and that she wants a ruling on the program's validity "before she invests additional time and money" into the process. SAC ¶¶ 40(2), (5); 42. In other words, there is nothing actually preventing her from applying. But she wants this Court to invest its time and the taxpayers' money into issuing an advisory opinion on the diversity grant

program—and she is willing to invest time and money into a *lawsuit* to litigate that issue—before she invests her time into an application process that, if unsuccessful, would eliminate her interest in the dispute.  The Court should reject such a radical attempt to circumvent the law of standing.

"In order to satisfy the standing requirement of an 'actual or imminent' injury, a plaintiff generally must submit to the challenged policy before pursuing an action to dispute it."  *Davis v. Tarrant County*, 565 F.3d 214 (5th Cir. 2009) ((citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-71 (1972), for the proposition that a "plaintiff who had never applied for membership lacked standing to challenge fraternal organization's discriminatory membership policies"); *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 388 (5th Cir. 2003) (plaintiff lacked standing to challenge Medicaid waiver policy because he failed to apply for waiver services); *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (cited in *Davis* for the proposition that a "plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit"); *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 56–57 (D.C. Cir. 1992) (plaintiff members lacked standing when they were qualified but "entirely removed themselves from consideration by not applying" which is different "from those in which the courts have framed plaintiff's injury as the loss of an opportunity to compete").  True, courts will excuse this requirement where a policy would make the exercise "futile."  *Davis*, 565 F.3d at 220.  But Plaintiff does not allege that applying *for the DSP program* would be futile; to the contrary, she alleges that she would be a strong candidate.

Under these circumstances, if Plaintiff is truly interested in becoming a DSP owner, then she needs to pursue the application process (in which she will compete on equal footing with other

candidates without regard to her race).  Until then, she remains too far removed from the challenged practice to enjoy Article III standing.[7]

**Plaintiff cannot claim start-up costs as a "present-day injury."**  Plaintiff also asserts that she presently is injured because she "must pay $10,000 more to start a delivery-service-partner business."  SAC ¶ 40(1).  However, on the face of the Complaint, Plaintiff has no start-up costs at the present day and will not need to incur any start-up costs until she receives an offer to join the DSP program.  In this respect, her allegation about incurring start-up costs is indistinguishable from her allegation that she would not be eligible for a DSP grant.  Both are contingent on her actually becoming a DSP owner.  Because she is not a DSP owner nor imminently about to become one, the speculative possibility that in the future she may need to incur start-up costs without offset from the grant is insufficient to show a present-day injury in fact.

**Plaintiff cannot plausibly allege any competitive disadvantage in the application process itself.**  Plaintiff also alleges the diversity grant purportedly puts her "at a competitive disadvantage in the application process" because Amazon's DSP diversity grant "draw[s] in minority applicants who would otherwise sit out or pursue other career opportunities."  SAC ¶ 40(3).  She then further speculates that black, Latino, and Native American applicants will have "more credible applications because they will automatically have an extra $10,000 in startup capital."  SAC ¶ 40(4).  This theory of injury fails as well.

As explained above, neither race nor the diversity grant plays any role in the DSP selection process.  Mikhail Decl., Ex. A, ¶ 12.  The DSP application materials estimate $10,000 in start-up

---

[7] Plaintiff's invocation of the Declaratory Judgment Act (SAC ¶ 42) does not change the analysis, as declaratory relief still requires a plaintiff to show an "actual controversy," 28 U.S.C. § 2201(a)—a requirement that is not met if "the purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all.'" *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010) (cleaned up).

costs and require applicants to demonstrate access to $30,000 in liquid assets to provide a cushion for personal expenses while the owner is training and launching the business.  Ex. B ("Financials—If the start-up cost is estimated to be $10,000, why is the liquid asset requirement $30,000?"); *see also* Ex. D.  Eligibility for the diversity grant does not reduce the liquid-asset requirement.  Mikhail Decl., Ex. A, ¶¶ 12, 17.  From the perspective of a facial attack, her allegation that minority applicants will be viewed as having "more credible applications" is purely speculative and conclusory and not based on any well-pleaded facts.  From the perspective of a factual attack, the allegation is simply wrong.

That leaves Plaintiff with the speculative theory that she is harmed because the grant may attract additional applicants, who would then compete with plaintiff on the merits in the race-neutral selection process.  Mikhail Decl., Ex. A, ¶ 12.  Even if the purpose of the grant is to attract additional, qualified candidates, there is no "competitive disadvantage" to Plaintiff based on her race because all applicants, regardless of race, would face the same increase in competition.  Moreover, Plaintiff's requested remedy includes "extending the $10,000 benefit to whites and Asians" (SAC ¶ 41), which presumably would only further increase the applicant pool.  And Plaintiff's theory of injury directly contradicts her allegation elsewhere in the complaint that, if she applied, she would be selected.  SAC ¶ 29.

In all events, any such injury remains purely speculative and "contingent on innumerable suppositions." *Trinity*, 963 F.2d at 799.  Even if the diversity grant did attract more applicants to the general pool, it would affect her only to the extent that she was otherwise able to pass through the multiple rounds of interviews and identify a suitable location, but lose the opportunity to someone who would not otherwise have applied.  Given that Plaintiff has *voluntarily* chosen not

to apply, there is no way to know whether this hypothetical chain of events would ever come to pass.

Ultimately, because Plaintiff is voluntarily *unwilling* to apply for a DSP contract—despite having no actual barrier to engaging in the process—she stands in the same position as any other member of the public who may view Amazon's grant program as contrary to the law but who is not directly affected by it.  *See Carney*, 141 S. Ct. at 499 ("[A] plaintiff cannot establish standing by asserting an abstract 'general interest common to all members of the public,' . . . 'no matter how sincere' or 'deeply committed' a plaintiff is to vindicating that general interest on behalf of the public.") (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706–07 (2013)); *Lujan*, 504 U.S. at 573–74 (collecting cases concluding that "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy").  The Court should reject Plaintiff's attempt to manufacture standing for herself by expanding Supreme Court jurisprudence beyond its limits.  Further, because Plaintiff has already had multiple opportunities to amend and cannot cure the fundamental defects identified above, her complaint should be dismissed with prejudice.

## II.      The Complaint Should be Dismissed Because Plaintiff Fails to State a Claim Upon Which Relief May Be Granted.

Even if Plaintiff's conclusory allegations were sufficient to plead Article III standing, they are insufficient to show that racial discrimination was a but-for cause of Plaintiff suffering any injury, which is required to state a claim under § 1981.  This failure independently requires dismissal under Rule 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (articulating legal standard for Rule 12(b)(6) motion to dismiss); *see also supra* at pp. 9–10 (same).

To state a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Thus, the plaintiff "has the burden of pleading facts that, taken as true, permit the Court to infer that race was a but-for cause of [her] injury." *Simmons v. Triton Elevator, LLC*, No. 3:19-CV-1206-B, 2020 WL 7770245, at *3 (N.D. Tex. Dec. 30, 2020) (internal quotation marks omitted).

As the case law further reflects, the plaintiff "must establish the loss of an actual, not speculative or prospective, contract interest," which requires "offer[ing] evidence of some tangible attempt to contract" that "was in some way thwarted" by the defendant. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751–52 (5th Cir. 2001). "[A] § 1981 claim must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase or receiving service after attempting to do so." *Id.* at 752 (quoting with approval *Henderson v. Jewel Food Stores, Inc.*, No. 96 C 3666, 1996 WL 617165, at *3 (N.D. Ill. Oct. 23, 1996)). Thus, "merely alleg[ing] *possible* loss of *future* opportunities" to enter into a contract is not enough. *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) (emphasis in original). Where the plaintiff "points to no contract that [s]he *bid on* and *failed to obtain* because of racial animus," the claim must be dismissed. *Smart v. Int'l Broth. of Elec. Workers, Loc. 702*, 315 F.3d 721, 726 (7th Cir. 2002) (emphasis added).

Plaintiff cannot show that her race is a but-for cause of not receiving the diversity grant because she is not a DSP owner, and only DSP owners are eligible for that grant. SAC at 1; *see also id.* ¶ 57(b). The but-for cause of her not receiving a grant is that she is not a DSP owner, as opposed to anything related to her race. Further, because Plaintiff voluntarily chose not to apply, she cannot show that she was actually *prevented* from obtaining a DSP contract due to her race.

At most, she alleges that she was *deterred* from applying and has thereby suffered a *hypothetical* loss of a *future* opportunity to become a DSP owner and receive a grant.  Even if such allegations were sufficient for Article III standing (and they are not), the allegations are insufficient to plead the but-for causation required to state a claim under § 1981.  Because Plaintiff does not and cannot state a claim upon which relief may be granted, the Court should dismiss the Complaint even if the Court had the power to decide this dispute.

### CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant Amazon's motion and dismiss Plaintiff's Second Amended Class-Action Complaint with prejudice.  Amazon further respectfully requests such further relief to which it may be justly entitled.

Dated: March 24, 2023

                     Respectfully Submitted,

BY: */s/ Angela C. Zambrano*
    Angela C. Zambrano, *Lead Attorney*
    Texas Bar No. 24003157
    angela.zambrano@sidley.com
    Margaret Hope Allen
    Texas Bar No. 24045397
    margaret.allen@sidley.com
    Natali Wyson
    Texas Bar No. 24088689
    nwyson@sidley.com
    SIDLEY AUSTIN LLP
    2021 McKinney Avenue, Suite 2000
    Dallas, Texas 75201
    Telephone:    (214) 981-3300
    Facsimile:    (214) 981-3400

    David R. Carpenter
    (*pro hac vice forthcoming*)
    drcarpenter@sidley.com
    SIDLEY AUSTIN LLP
    555 West Fifth Street, Suite 4000
    Los Angeles, California 90013
    Telephone:    (213) 896-6000
    Facsimile:    (213) 896-6600

    */s/ Deron R. Dacus*
    Deron R. Dacus
    Texas Bar No. 00790553
    ddacus@dacusfirm.com
    The Dacus Firm, P.C.
    821 ESE Loop 323, Suite 430
    Tyler, Texas 75701
    Phone/Fax:    (903) 705-1117

    *Attorneys for Defendant Amazon.com, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on March 24, 2023.

/s/ *Natali Wyson*
Natali Wyson