UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**Crystal Bolduc**,

        Plaintiff,

v.

**Amazon.com Inc.**,

        Defendant.

Case No. 4:22-cv-615-ALM

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

Table of contents......................................................................................................i
Table of authorities.................................................................................................ii
   I.   Ms. Bolduc has alleged Article III standing................................................. 1
   II.  Ms. Bolduc has alleged violations of 42 U.S.C. § 1981 ............................... 9
Conclusion.............................................................................................................11
Certificate of service .............................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*American Legion v. American Humanist Ass'n*,
 139 S. Ct. 2067 (2019)..................................................................................... 2

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003) ...................................................... 9

*Boudloche v. Conoco Oil Corp.*, 615 F.2d 687 (5th Cir. 1980) ................................ 9

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ....................................... 4, 5, 6

*Comcast Corp. v. National Ass'n of African-American Owned Media*,
 140 S. Ct. 1009 (2020).................................................................................. 10

*Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) ........................................ 2

*Davis v. Tarrant County*, 565 F.3d 214 (5th Cir. 2009)........................................... 4

*Department of Commerce v. New York*, 139 S. Ct. 2551 (2019)...................... 4, 5, 6

*FEC v. Akins*, 524 U.S. 11 (1998) ........................................................................... 2

*Federal Election Commission v. Ted Cruz for Senate*,
 142 S. Ct. 1638 (2022)................................................................................... 3

*Frederiksen v. City of Lockport*, 384 F.3d 437 (7th Cir. 2004) ............................... 9

*Grutter v. Bollinger*, 539 U.S. 306 (2003)............................................................ 10

*Heckler v. Mathews*, 465 U.S. 728 (1984).............................................................. 8

*Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975) ............................ 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................... 3, 4, 5, 7

*Manhattan Community Access Corp. v. Halleck*,
 139 S. Ct. 1921 (2019)............................................................................ 1, 4, 7

*Massachusetts v. EPA*, 549 U.S. 497 (2007)....................................................... 6, 8

*McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273 (1976) ................. 10

*Northeast Florida Chapter of Associated General Contractors of
 America v. City of Jacksonville*, 508 U.S. 656 (1993).......................................... 8

*Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000)..................... 5

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)........................................ 9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .................................... 5, 6

*Swope v. Columbian Chemicals Co.*, 281 F.3d 185 (5th Cir. 2002).......................... 9

*United States v. Students Challenging Regulatory Agency Procedures
 (SCRAP)*, 412 U.S. 669 (1973)..................................................................... 1, 7

*Village of Elk Grove Village v. Evans*, 997 F.2d 328 (7th Cir. 1993)........................ 6

A plaintiff needs only to *allege* standing and a claim on which relief may be granted at the motion-to-dismiss stage, and all factual allegations in the complaint must be presumed true. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). The allegations in the complaint easily surmount the defendants' jurisdictional and merits objections at this stage of the litigation.

### I.   Ms. Bolduc Has Alleged Article III Standing

Amazon tries to defeat standing by claiming that Ms. Bolduc (and other putative class members) will not encounter racial discrimination unless and until they have been accepted as DSP owners. And it insists that mere *applicants* to the DSP program cannot experience Article III injury from the racial preferences that Amazon is conferring on those who have been accepted as DSPs. In Amazon's view, Ms. Bolduc must first win acceptance into its DSP program before she can have standing to challenge the legality of its racially discriminatory contracting practices.[1] This argument is wrong for many reasons.

First. It is not necessary for Ms. Bolduc (or anyone else) to directly experience racial discrimination from Amazon before she can allege or establish Article III injury. The concept of Article III injury is vast—and it encompasses far more than the injuries that result when someone is actually denied a benefit because of race. *See, e.g., United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) ("[A]n identifiable trifle is enough for standing" (citation

---

1.   Of course, neither Ms. Bolduc nor anyone else can apply or be accepted into Amazon's DSP program without first signing an arbitration agreement that precludes them from challenging the legality of Amazon's diversity stipends in court.

and internal quotation marks omitted)); *FEC v. Akins*, 524 U.S. 11, 20 (1998) ("failure to obtain relevant information" establishes injury in fact); *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *American Legion v. American Humanist Ass'n*, 139 S. Ct. 2067 (2019) (unwanted contact with a religious display sufficient to confer standing). Ms. Bolduc has alleged no fewer than *five* Article III injuries in her complaint,[2] and Amazon must show that *none* of these alleged harms qualify as "injury in fact" under Article III—all while assuming the truth of Ms. Bolduc's factual allegations.

The relevant injuries are described in paragraph 40 of the second amended complaint, and none of them allege that Ms. Bolduc is currently being passed over for the $10,000.00 stipend on account of her race. *See* Second Amended Complaint, ECF No. 15, ¶ 40. Instead, the complaint describes how Ms. Bolduc is suffering *other* present-day injuries on account of Amazon's racially discriminatory practices:

> Ms. Bolduc is suffering present-day injury in fact because: (1) Ms. Bolduc must pay $10,000 more to start a delivery-service-partner business because she is white rather than a member of the Amazon-preferred racial categories; (2) Ms. Bolduc's ineligibility to recoup the $10,000 in startup costs on account of her race makes her unwilling to apply to Amazon's delivery-service-partner program; (3) The $10,000 stipend that Amazon promises to companies owned by blacks, Latinos, and Native Americans places Ms. Bolduc at a competitive disadvantage in the application process by drawing in minority applicants who would otherwise sit out or pursue other career opportunities; (4) The black, Latino, and Native American applicants who will compete against Ms. Bolduc for acceptance into the DSP program have more credible applications because they will automatically have an extra $10,000 in startup capital if their companies become delivery service partners; and (5) Ms. Bolduc cannot apply to the DSP program or have her company become an Amazon delivery service partner without subjecting herself to racial discrimination.

---

2. *See* Second Amended Complaint, ECF No. 15, ¶ 40.

*Id*. Amazon's brief correctly observes that Ms. Bolduc has not (yet) been passed over for the diversity grant—and she won't be unless or until she gets accepted as a DSP owner. *See* Mot. to Dismiss, ECF No. 23, at 5–8; *id*. at 11–17. But Amazon is attacking a straw man because Ms. Bolduc's alleged injuries do not depend on whether she ultimately gets accepted as a DSP owner or whether she directly encounters racial discrimination at the hands of Amazon. Ms. Bolduc is suffering Article III injury *regardless* of whether she applies or is accepted into Amazon's DSP program. *See* Second Amended Complaint, ECF No. 15, ¶ 40.

Amazon eventually gets around to addressing the Article III injuries described in the complaint. *See* Mot. to Dismiss, ECF No. 23, at 17–21. But none of its arguments show that Ms. Bolduc has failed to *allege* an Article III injury, which is all that is needed at this stage of the litigation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (Article III's standing requirements "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation."). Consider Ms. Bolduc's allegation that her "ineligibility to recoup the $10,000 in startup costs on account of her race makes her unwilling to apply to Amazon's delivery-service-partner program." Second Amended Complaint, ECF No. 15, ¶ 40. Amazon tries to brush this off as a self-inflicted harm. *See* Mot. to Dismiss, ECF No. 23, at 17 ("[T]here is nothing actually preventing [Ms. Bolduc] from applying."). But the Supreme Court has rejected the idea that injuries caused or aggravated by a plaintiff's voluntary choices cannot support Article III injury, so long as the alleged injuries remain "fairly traceable" to the defendant's allegedly wrongful conduct. *See Federal Election Commission v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1647 (2022) ("[T]he Government asks us to recognize an exception to traceability for injuries that a party purposely incurs. We have never recognized a rule of this kind under Article III. To the contrary, we have made clear that an injury resulting from the application or

threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred."). Amazon does not deny that Ms. Bolduc's present-day unwillingness to apply for the DSP program is "fairly traceable" to its racially discriminatory stipends, and it cannot deny this while simultaneously accepting the truth of Ms. Bolduc's factual allegations. *See* Second Amended Complaint, ECF No. 15, ¶ 40 ("Ms. Bolduc's ineligibility to recoup the $10,000 in startup costs on account of her race makes her unwilling to apply to Amazon's delivery-service-partner program"); *Manhattan Community Access Corp.*, 139 S. Ct. at 1927 ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). So Amazon's objections boil down to the idea that Ms. Bolduc's unwillingness to apply to the DSP program cannot support Article III standing because the alleged injury was voluntarily incurred—the very notion that the Supreme Court rejected in *Cruz*.

Amazon is also wrong to claim that Ms. Bolduc "'must submit to the challenged policy before pursuing an action to dispute it.'" Mot. to Dismiss, ECF No. 23, at 18 (quoting *Davis v. Tarrant County*, 565 F.3d 214 (5th Cir. 2009)). That statement would be true only if Ms. Bolduc's *sole* injury consisted of the racially discriminatory treatment that she will encounter after being accepted into the DSP program. An injury of that sort would not be "imminent" when Ms. Bolduc has not applied to become a DSP owner. *See Lujan*, 504 U.S. at 560 (claiming that Article III injury must be "actual or imminent," not "conjectural" or "hypothetical") (citation and some internal quotation marks omitted)); *but see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (acknowledging that the "substantial risk" of future harm suffices to support Article III standing); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (same). But Ms. Bolduc's complaint alleges and describes injuries that she is encountering *now*—such as her present-day unwillingness to apply to the

DSP program on account of Amazon's racially discriminatory treatment of DSP owners—so there is no need for Ms. Bolduc to formally apply to become a DSP owner before those alleged injuries spring into existence.[3]

Amazon is doubly wrong to insist that Ms. Bolduc must apply before suing because Ms. Bolduc can establish standing merely by pointing to a "substantial risk" of a *possible* future injury—even if that injury is not "imminent" or certain to occur. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' *or* there is a 'substantial risk' that the harm will occur." (emphasis added) (citation and some internal quotation marks omitted); *Dep't of Commerce*, 139 S. Ct. at 2565 (same). Amazon is correct to observe that *some* cases from the Supreme Court appear to suggest that future injuries must be "imminent" or "certainly impending" before they can serve as basis for Article III standing. *See Lujan*, 504 U.S. at 560; *Clapper*, 568 U.S. at 401–02, 409 (insisting repeatedly that future injuries must be "certainly impending" to confer Article III standing, while simultaneously walking back that stance in footnote 5 of the opinion). But other cases have made clear that imminence is a sufficient and not a necessary condition for Article III injury, and that a litigant needs only to allege

---

3. Amazon's citation of *Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000), does nothing to defeat Ms. Bolduc's standing because the plaintiffs in that case failed to allege *any* "personal injury" from LSU's unequal treatment of male and female varsity athletes. *See id.* at 872 n.14 ("The treatment of participants in female varsity athletics has not impacted plaintiffs as they have not been female varsity athletes and therefore have not been discriminated against by any alleged treatment of LSU's female varsity athletes; therefore a change in said treatment would not impact plaintiffs. Plaintiffs have personally suffered no injury or threatened injury due to LSU's allegedly illegal treatment of its varsity athletes and as such fail the initial prong of the standing inquiry as to the claims for illegal treatment of athletes."). Ms. Bolduc, by contrast, has alleged in detail how Amazon's racially discriminatory treatment of DSP owners is inflicting present-day injury on her. *See* Second Amended Complaint, ECF No. 15, ¶ 40. Amazon must show how these alleged injuries fail to qualify as "injury in fact" under Article III; it cannot pretend as though no injury has been alleged.

a "substantial risk" that a possible future injury *might* occur. *See Dep't of Commerce*, 139 S. Ct. at 2565; *Susan B. Anthony List*, 573 U.S. at 158; *Clapper*, 568 U.S. at 414 n.5; *see also Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) ("[E]ven a small probability of injury is sufficient to create a case or controversy—to take a suit out of the category of the hypothetical—provided of course that the relief sought would, if granted, reduce the probability") (quoting *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993)). Ms. Bolduc has done more than enough to allege a "substantial risk" of future injury throughout her complaint, in addition to the present-day injuries that she asserts.[4]

Ms. Bolduc is also suffering present-day injury from the fact that she cannot become a DSP owner without putting in $10,000 more than a similarly situated minority. This makes the process of becoming a DSP owner more costly for Ms. Bolduc solely because she is white, and it places Ms. Bolduc at a competitive disadvantage because the diversity stipend draws in minority applicants who would otherwise sit out and gives them more credible applications because they will automatically have an extra $10,000 to work with once accepted into the program. *See* Second Amended Complaint, ECF No. 15, ¶ 40. Amazon denies that Ms. Bolduc is suffering "injury" from these extra startup costs because she has not yet been accepted as a DSP owner,[5] but these racially discriminatory burdens are what deterred Ms. Bolduc from applying to the DSP program in the first place. *See id.* at ¶ 41 ("Ms. Bolduc will not apply to the Amazon delivery-service-partner program until Amazon eliminates this racially

---

4. Amazon does not even acknowledge that a "substantial risk" of future injury can confer Article III standing, let alone deny that Ms. Bolduc has alleged a "substantial risk" of future harm in her complaint.
5. *See* Mot. to Dismiss, ECF No. 23, at 19 ("Plaintiff has no start-up costs at the present day and will not need to incur any start-up costs until she receives an offer to join the DSP program.").

discriminatory policy."). That is an injury that Ms. Bolduc is experiencing *now*, and it is "fairly traceable" to Amazon's racially discriminatory stipends.

Amazon also complains that Ms. Bolduc's allegations of competitive disadvantage are "speculative." Mot. to Dismiss, ECF No. 23, at 20. But this Court must assume the truth of Ms. Bolduc's allegations at this stage of the litigation, and it cannot disbelieve her factual allegations regardless of how "speculative" they may seem. *See Manhattan Community Access Corp.*, 139 S. Ct. at 1927 ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). Ms. Bolduc will eventually need to prove her competitive-disadvantage injury by a preponderance of the evidence if she wishes to rely on this theory of Article III standing, but she does not need proof at the motion-to-dismiss stage, and courts may not dismiss complaints based on their disbelief of a factual allegation. *See Lujan*, 504 U.S. at 561 (Article III's standing requirements "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.").

Amazon denies that Ms. Bolduc will suffer competitive disadvantage on account of her race because "all applicants, regardless of race, would face the same increase in competition." Mot. to Dismiss, ECF No. 23, at 20. But that *still* qualifies as an Article III injury to Ms. Bolduc, even if the injury lacks a racial component. Article III does not require a plaintiff alleging unlawful discrimination to show an "injury in fact" that affects only members of a particular race. *See SCRAP*, 412 U.S. at 689 n.14 ("[A]n identifiable trifle is enough for standing" (citation and internal quotation marks omitted)). As long as Ms. Bolduc is injured, it does not matter whether or to what extent other individuals or other races share in the alleged injury.

Amazon also suggests that Ms. Bolduc's requested relief will not redress her competitive-disadvantage injury if the $10,000 stipend is extended to all comers. *See* Mot. to Dismiss, ECF No. 23, at 20 ("Plaintiff's requested remedy includes "extending the $10,000 benefit to whites and Asians" (SAC ¶ 41), which presumably would only

further increase the applicant pool."). But Ms. Bolduc is requesting relief that will "eliminate[ ] this racially discriminatory policy, *either* by extending its $10,000 benefit to whites and Asians *or curtailing or eliminating the benefit entirely*." Second Amended Complaint, ECF No. 23, at ¶ 41 (emphasis added); *see also Heckler v. Mathews*, 465 U.S. 728, 740 (1984) ("[W]hen the right invoked is that of equal treatment, the appropriate remedy is a mandate of *equal* treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." (citation and internal quotation marks omitted)). So there is no redressability problem with the competitive-disadvantage injury that Ms. Bolduc asserts.

There is also no merit to Amazon's claim that the competitive-disadvantage injury "contradicts [Ms. Bolduc's] allegation elsewhere in the complaint that, if she applied, she would be selected." Mot. to Dismiss, ECF No. 23, at 20. An applicant can suffer injury in fact from increased competition for a DSP position, even if that added competition does not ultimately deprive the applicant of the desired position. A competitive-disadvantage injury need not change the outcome to establish injury in fact. *See Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."); *Massachusetts*, 549 U.S. at 525 n.23 ("[E]ven a small probability of injury is sufficient to create a case or controversy — to take a suit out of the category of the hypothetical — provided of course that the relief

sought would, if granted, reduce the probability") (citation omitted)); *Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003) ("[C]ourts of appeals have generally recognized that threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes.").[6]

## II. Ms. Bolduc Has Alleged Violations Of 42 U.S.C. § 1981

The complaint alleges that Amazon is discriminating among its contractors by awarding a $10,000 "diversity stipend" to its black, Latino, and Native American DSP owners, while withholding this benefit from similarly situated white and Asian contractors. That indisputably describes a violation of 42 U.S.C. § 1981, and Amazon does not contend otherwise. *See McDonald v. Santa Fe Trail Transportation Co.*, 427

---

6. Amazon claims that the Court should dismiss the second amended complaint "with prejudice" if decides that Ms. Bolduc failed to allege Article III standing. *See* Mot. to Dismiss, ECF No. 23, at 21. We respectfully disagree. Dismissal for lack of Article III standing is a dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), and a with-prejudice dismissal can be issued only by a court with subject-matter jurisdiction over the controversy. *See Boudloche v. Conoco Oil Corp.*, 615 F.2d 687, 688–89 (5th Cir. 1980) ("The district court properly concluded that it did not have jurisdiction but it erred in granting summary judgment and dismissing with prejudice. Since the court lacked jurisdiction over the action, it had no power to render a judgment on the merits."); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction."); *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (Easterbrook, J.) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render. 'No jurisdiction' and 'with prejudice' are mutually exclusive." (citation omitted)).

    Amazon's request for a dismissal with prejudice is understandable, as dismissals "without prejudice" are typically regarded as non-final and non-appealable. *See Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 193 (5th Cir. 2002). But the better approach is to simply enter a jurisdictional dismissal and announce that the dismissal has become final for appellate-jurisdiction purposes, which enables an appeal without entering a judgment on the merits in the absence of jurisdiction.

U.S. 273, 287 (1976) (holding that 42 U.S.C. § 1981 protects whites and racial minorities on equal terms); *Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) ("[T]he prohibition against discrimination in § 1981 is co-extensive with the Equal Protection Clause."). The diversity stipend is a contractual interest, and the race of a DSP owner is the sole determinant of whether he or she obtains this benefit. That establishes but-for causation. *See Comcast Corp. v. National Ass'n of African-American Owned Media*, 140 S. Ct. 1009, 1013 (2020) (holding that 42 U.S.C. § 1981 requires a showing of but-for causation). Ms. Bolduc may therefore ask a court to enjoin these ongoing violations of federal law, so long as she can establish an Article III injury traceable to the alleged violations. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975) (recognizing an implied right of action to sue those who violate 42 U.S.C. § 1981).

Amazon claims that Ms. Bolduc must allege that she has *already lost* a contractual interest because of her race before she can state a claim for relief under 42 U.S.C. § 1981. *See* Mot. to Dismiss, ECF No. 23, at 22 (claiming that Ms. Bolduc must show that "she was actually *prevented* from obtaining a DSP contract due to her race." (emphasis in original)). Not at all. Ms. Bolduc is seeking *prospective* relief to enjoin *future* violations of 42 U.S.C. § 1981,[7] and a litigant seeking prospective relief does not need to allege or prove that the defendant has already violated her rights under 42 U.S.C. § 1981. It is enough for Ms. Bolduc to allege that Amazon is currently violating 42 U.S.C. § 1981 by discriminating amongst its contractors, and that those ongoing violations of federal law are injuring Ms. Bolduc and the putative class members. A federal court is authorized to redress those alleged injuries with declaratory and injunctive relief.

---

7. *See* Second Amended Complaint, ECF No. 23, at ¶ 57(b)–(c).

## CONCLUSION

The motion to dismiss the second amended complaint should be denied.

Respectfully submitted.

| | |
|---|---|
| | /s/ Jonathan F. Mitchell |
| Adam K. Mortara* | Jonathan F. Mitchell |
| Illinois Bar No. 6282005 | *Lead Attorney* |
| Lawfair LLC | Texas Bar No. 24075463 |
| 125 South Wacker Drive, Suite 300 | Mitchell Law PLLC |
| Chicago, Illinois 60606 | 111 Congress Avenue, Suite 400 |
| (773) 750-7154 | Austin, Texas 78701 |
| adam@mortaralaw.com | (512) 686-3940 (phone) |
| | (512) 686-3941 (fax) |
| Gene P. Hamilton* | jonathan@mitchell.law |
| Virginia Bar No. 80434 | |
| Vice-President and General Counsel | |
| America First Legal Foundation | |
| 300 Independence Avenue SE | |
| Washington, DC 20003 | |
| (202) 964-3721 | |
| gene.hamilton@aflegal.org | |

\* admitted *pro hac vice*

Dated: April 26, 2023                                 *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 26, 2023, I served this document through CM/ECF upon:

Angela C. Zambrano
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
(214) 981-3405 (phone)
angela.zambrano@sidley.com

Deron R. Dacus
Texas Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117 (phone)
903-581-2543 (fax)
ddacus@dacusfirm.com

*Counsel for Defendant*

   /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiff*