**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| CRYSTAL BOLDUC,<br><br>               Plaintiff,<br><br>    vs.<br><br>AMAZON.COM INC.,<br><br>           Defendant. | Civil Action No. 4:22-cv-615-ALM |

## DEFENDANT AMAZON.COM, INC.'S REPLY IN SUPPORT OF THE MOTION TO DISMISS SECOND AMENDED COMPLAINT

Amazon.com, Inc. ("Amazon") respectfully submits this Reply in support of its Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") (Dkt. 23) and to Plaintiff Crystal Bolduc's Response (the "Response") (Dkt. 27).

## INTRODUCTION

Plaintiff concedes, as she must, critical points that are fatal to her complaint.  She acknowledges that only "those who have been accepted as DSPs" may receive the diversity grant. Resp. 1.  She concedes further that she has not "been passed over for the diversity grant—and she won't be unless or until she gets accepted as a DSP owner." *Id*. at 3; *see also id.* at 2, 4 (admitting she is not "currently being passed over for the $10,000.00 stipend on account of her race" and it is not "imminent" that she will be).  Instead, Plaintiff argues that she does not need to "directly experience racial discrimination from Amazon" to sue Amazon for racial discrimination. *Id.* at 1.

Plaintiff is wrong.  This is a § 1981 case claiming discrimination in the provision of alleged contractual benefits (the diversity grant).  If Plaintiff is not and will not imminently be within the class of people subject to the alleged discrimination—i.e., she has not been and may never be denied any contractual benefit due to her race—then she has no standing and no claim.

Plaintiff attempts to obscure her lack of standing by manufacturing purported "present-day injuries," largely based on her own unwillingness to apply for the DSP program and misstatements regarding the DSP application process and diversity grant.  Her arguments are contrary to longstanding precedent demonstrating the *facial* insufficiency of her allegations, and she ignores entirely Amazon's *factual* attack under Rule 12(b)(1).  Indeed, Plaintiff's Response confirms the speculative nature of her purported injuries and that the diversity grant has no effect on the DSP application process.  Her allegations are insufficient to show Article III standing, and even if they were sufficient, she fails to state a claim under clear precedent applying § 1981.  Amazon's Motion should be granted, and the Complaint should be dismissed without leave to amend.

## ARGUMENTS AND AUTHORITIES

I.    **Plaintiff Does Not and Cannot Show Article III Standing.**

A.    **Plaintiff Fails to Address Amazon's Factual Attack and Thus Concedes Amazon's Evidence About the DSP Application Process and Diversity Grant.**

Plaintiff ignores that Amazon's 12(b)(1) Motion asserts both a facial and factual attack and instead argues that the Court must accept "all factual allegations in the complaint" as true. Resp. 1, 2, 4, 7. Under a *facial* attack, the Court must accept as true well-pleaded factual allegations; however, the Court need not accept legal conclusions or bare assertions as true. *Gaylor v. Inland Am. McKinney Towne Crossing LP, LLC*, No. 4:13-cv-307, 2014 WL 1912388, at *2 (E.D. Tex. May 13, 2014). Separately, under a *factual* attack, the defendant may submit evidence beyond the pleadings, and the plaintiff must "prove the existence of subject-matter jurisdiction by a preponderance of the evidence." *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (internal quotations and citations omitted); *see also State of Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973) (on subject matter jurisdiction, courts "may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment"). Where a defendant's evidence is not countered, the court may resolve the motion on those facts. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (courts can "dismiss for lack of subject matter jurisdiction" based on "the complaint supplemented by undisputed facts evidenced in the record").

Plaintiff's Response makes no mention of Amazon's factual attack and ignores entirely the facts stated in the Mikhail declaration. That declaration confirms, among other things, that (a) the DSP application process is lengthy, involves multiple steps, and is highly selective (with an acceptance rate of about 3%); (b) neither race nor the availability of the diversity grant plays any role in selecting who will receive offers to join the DSP program; and (c) the grant does not

supplement or replace the need to show access to $30,000 in liquid assets.  Mot., Ex. A, ¶¶ 4, 12, 17.  While the Complaint fails on its face, this unrefuted evidence further confirms why Plaintiff is too far removed from the challenged policy to have standing.

    **B.**    **Plaintiff Lacks Standing Because She Is Not, and Will Not Imminently Be, in the Class of People Subject to the Allegedly Discriminatory Treatment, and Her Alleged "Present-Day Injuries" Are Not Legally Sufficient.**

As the Motion explains, Plaintiff's claims are premised not on any racial preference in the DSP application process itself, but on Amazon's internal policies for people who are already DSP owners.  Plaintiff is not a DSP owner, and because she has not applied, she is not imminently in a position to be one.  Even if she did apply, whether she would ultimately become a DSP owner and become affected by the grant is speculative and dependent on a highly attenuated series of contingent events.  Plaintiff is in the same position as the club soccer players in *Pederson* who "have not been female varsity athletes and therefore have not been discriminated against by any alleged treatment of LSU's female varsity athletes."  *Pederson v. La. State Univ.*, 213 F.3d 858, 872 n.14 (5th Cir. 2000).

Plaintiff argues that it is immaterial whether she "directly encounters racial discrimination at the hands of Amazon."  Resp. 3.  Yet courts—including cases cited by Plaintiff—have repeatedly emphasized that standing requires a plaintiff to show a "direct injury,"[1] and if Plaintiff is not actually subject to the challenged discriminatory policy and may never be, then she cannot satisfy that requirement.  Her attempt to manufacture purported "present-day injuries" as a

---

[1] *See e.g., Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560-61 (1992) (calling it "an established principle" that a plaintiff "must show that he has sustained or is immediately in danger of sustaining a *direct injury* as the result of that action"); *Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 798 (5th Cir. 1992) (Article III requires plaintiff to "demonstrate a realistic danger of sustaining a *direct injury* as a result of" the challenged conduct); *see also U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) (cited at Resp. 1) (confirming that standing is limited to "aggrieved" parties with a "direct stake").

substitute for directly encountering the alleged discrimination all fail.

> **1.    Plaintiff cannot assert standing on a claim regarding a purported competitive disadvantage in the application process.**

Plaintiff argues that the diversity grant causes competitive harm by giving minority applicants "more credible applications" or by increasing the number of applicants.  Resp. 6-7. Plaintiff's transparent purpose in making such allegations is to shoehorn this case into the line of cases involving racial preferences *in the bidding or application process*, where the injury is the inability to compete "on equal footing."  *Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 668-69 (1993) (cited at Resp. 8).

Those cases are inapposite.  This case is not about racial preferences in the application process itself, but about a benefit given to some DSP owners *after* they are selected.  For the *facial* attack, the Court can consider the DSP program description on Amazon's website, and nothing supports any inference that the grant offsets the application requirements or bolsters an application. Mot. 5-8; Exs. B-D.  For the *factual* attack, Plaintiff does not dispute the Mikhail declaration definitively stating that the grant has no effect on the application process.  Mot., Ex. A, ¶¶ 12, 17. Even if the diversity grant may attract more applicants generally, any actual impact on Plaintiff remains speculative, particularly when she has not even attempted to apply (e.g., it would depend on whether she even passed initial screening interviews and who is competing for a given geographic territory).  Moreover, Plaintiff fails to cite any case that competing on equal footing with a larger pool of qualified candidates constitutes an "injury" for purposes of a § 1981 claim.

Put simply, Plaintiff has not pled and cannot plead facts showing that Amazon discriminates on the basis of race in the DSP application process, or that she has encountered or imminently will encounter the alleged racial discrimination among those who are selected to be DSP owners.  Her Complaint is no better than a grievance from a member of the general public

demanding that Amazon follow what she believes to be the law.

### 2.    Plaintiff's "unwillingness" to apply is not an Article III injury.

Plaintiff argues that she does not need to have applied for a DSP position or be denied a benefit because Amazon's internal policies have made her "unwilling" to apply.  Resp. 4-5.  That theory is foreclosed by multiple lines of authority and is unsupported by the cases she cites.

Plaintiff ignores entirely the principle that "if a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition."  *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1161 (8th Cir. 2008).  The Fifth Circuit in *Davis v. Tarrant County* cited *Pucket* with approval while similarly recognizing that, "[i]n order to satisfy the standing requirement of an 'actual or imminent' injury, a plaintiff generally must submit to the challenged policy before pursuing an action to dispute it." 565 F.3d 214, 220 (5th Cir. 2009) (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972), for the proposition that a "plaintiff who had never applied for membership lacked standing to challenge fraternal organization's discriminatory membership policies").

Plaintiff brushes off *Davis*, Resp. 4, but numerous courts have held that a party cannot complain of being deprived a benefit without applying for that benefit, unless doing so would be futile.  *Davis*, 565 F.3d at 220 (collecting cases); Mot. 18.  Indeed, the D.C. Circuit rejected the precise argument Plaintiff makes here.  Mot. 18 (citing *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 56–57 (D.C. Cir. 1991) (plaintiffs failed to demonstrate standing based on a claim that they were ready and able to apply but were deterred from doing so due to the challenged practice)). As that court explained, because there was no actual barrier to applying, the plaintiffs "disqualified themselves," and their asserted interests in applying did "not satisfy the burden of showing that [they] *personally* suffered some actual or threatened injury as a result of" the challenged conduct.

*Id.* at 57 (cleaned up); *see also Ray Baillie Trash Hauling Inc. v. Kleppe*, 477 F.2d 696, 710 (5th Cir. 1973) ("It follows from *Moose Lodge* that the plaintiffs in the present case have no standing to litigate the issue of racial discrimination . . . because they did not even apply for participation in the program.").  Here, Plaintiff does not allege it would be futile to apply to the DSP program; she simply wants this Court to issue an advisory opinion before she is willing to apply.

There is good reason why, in the absence of futility, a plaintiff should be required to actually apply or otherwise satisfy the preconditions for seeking a benefit.  Courts should not be issuing advisory opinions based on a conjectural or hypothetical injury that may never occur.  If the plaintiff may never be in a position to receive or be denied the benefit at issue, regardless of the outcome of the lawsuit, then the court faces the "possibility of deciding a case in which no injury would have occurred at all."  *Lujan,* 504 U.S. at 560-61, 564 n.2 (requiring a "high degree of immediacy" particularly when the "the acts necessary to make the injury happen are at least partly within the plaintiff's own control"); *Trinity Indus., Inc.*, 963 F.2d at 798 (Article III is "not satisfied merely because a party requests a court . . . to declare its legal rights"); Mot. 13-14, 17.

Plaintiff's approach also runs counter to many other cases where the plaintiffs were too remotely situated from the challenged practice to have standing to sue:

- In *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 202-03, 207 (3d Cir. 2021), a California doctor lacked standing to challenge New Jersey hospital staffing practices, despite his desire to move to the state, because he had not taken all necessary steps to seek admission.  Mot. 14.  Under Plaintiff's theory, the California doctor simply could have pled he was unwilling to move until New Jersey changed its policies.

- In *Warth v. Seldin*, 422 U.S. 490, 504-08 (1975), plaintiffs failed to show a "substantial probability" that they would be able to buy or lease a house in another town due to its

zoning policies, despite a desire to move.  Under Plaintiff's theory, they merely needed to plead they were unwilling to try to move until the other town changed its policies.

- In *Attala County., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1044 (5th Cir. 2022), black residents lacked standing to challenge racially discriminatory jury selection practices where it was speculative whether they would encounter them.  Yet under Plaintiff's theory, it is not necessary to "directly encounter" the discrimination. Resp. 3.  The plaintiffs needed merely to allege that they would be unwilling to attend jury service (or were deterred in some other way) as long as the practices were ongoing.

A plaintiff should not be able to artfully plead around the lack of standing merely by asserting an unwillingness to seek the benefit in the first place.

The only case Plaintiff cites in support of her position is *Federal Election Commission v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1645-46 (2022), but that case proves Amazon's point.  There, the issue was *not* that the plaintiffs refused to subject themselves to the challenged law (restrictions on repayment of campaign loans made by the candidate), but that plaintiffs *knowingly* structured their finances in a way that triggered the law.  The Court held that plaintiffs' choice "to subject themselves to the [Act] does not change the fact that they *are* subject to [the Act], and will face genuine legal penalties if they do not comply," and thus "an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred." *Id.* at 1647.

*Cruz* is thus consistent with the rule in *Davis v. Tarrant County* that parties generally must subject themselves to a policy to challenge it.  Instead, Plaintiff removed herself from the process entirely, making it wholly speculative as to whether she would ever be in a position to become a DSP owner (as a precondition for receiving any grant).  As a result, she has no actual or imminent

"*direct injury*" due to Amazon's internal policies.

### 3.    The DSP start-up costs are not, on their face, a present-day injury.

Plaintiff alleges also that she "cannot become a DSP owner without putting in $10,000 more than a similarly situated minority," Resp. 6 (citing SAC ¶ 40(1)), but that clearly is not a present-day injury at all.  As is apparent from the Complaint and incorporated materials, the $10,000 refers to start-up costs for those who become DSP owners.  Mot., Exs. B, C;[2] *see also* Ex. A, ¶¶ 17-18.  Thus, alleging that Plaintiff would have to put in $10,000 more due to her race is no different than saying she might in the future be denied the stipend due to her race.  Neither is a present-day injury.  Both are contingent on whether she *actually* "is accepted into Amazon's DSP program," which Plaintiff concedes is not imminent.  Resp. 4.

### 4.    Plaintiff faces no "substantial risk" of future injury.

Plaintiff argues also that only "substantial risk" of injury is necessary.  Resp. 5.  The Fifth Circuit in *Attala County* rejected the notion that cases using "substantial risk" language imply some different and lesser burden than the "imminent risk " or "real and immediate threat" standard.  *Attala County*, 37 F.4th at 1042.  Regardless, Plaintiff cannot show an injury under any articulation of the standard.  Because she has not even applied to become a DSP owner, and has conceded that she will not apply, any risk of future injury would depend on a highly attenuated series of hypothetical events, defeating her standing under any standard.  Mot. 13-17; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (noting that even if the "substantial risk" standard "is relevant and is distinct from the 'clearly impending' requirement," plaintiffs fell "short of even that standard, in light of the attenuated chain of inferences necessary to find harm here").

---

[2] Plaintiff does not dispute that the DSP program information on Amazon's website may be considered on a facial challenge.  Mot. 5 n.3, 10.

Tellingly, Plaintiff fails to cite any case finding standing in circumstances analogous to those here.  Instead, she relies on cases where (a) plaintiffs had previously received "a credible threat of prosecution" and the "threat of future enforcement" was substantial;[3] or (b) the challenged act was about to occur in the plaintiff's jurisdiction, with a substantial risk of negative effects in the future.[4]  In cases involving an alleged denial of a benefit, those cases consistently hold that, absent futility, the plaintiff must have applied or otherwise satisfied the preconditions for receiving the benefit; otherwise, there is no direct or imminent injury.  *Supra* at pp. 5-7.  Further, the law is clear that where—as here—a party seeks prospective relief for future injury, "[t]he threat of future harm must be certainly impending; mere allegations of possible future injury do not suffice." *Attala County*, 37 F.3d at 1042.  Plaintiff's allegations fail on their face.

For all these reasons, Plaintiff lacks Article III standing to challenge alleged discriminatory practices affecting DSP owners.  Because Plaintiff does not and cannot proffer any ability to cure the deficiencies in her allegations, her Complaint should be dismissed without leave to amend.[5]

---

[3] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-63 (2014) (plaintiffs had standing because their prior statements were found to be probable-cause violations of Ohio law and plaintiffs intended to continue to make similar statements in the future).

[4] *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (holding that States had standing to challenge citizenship question on census questionnaire because several states "will lose out on federal funds that are distributed on the basis of state population"); *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (emphasizing that standing is expansive when it implicates a State's sovereign territory, and holding that State had standing to challenge EPA rule affecting motor-vehicle emissions within its jurisdiction because of risks of climate change); *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993) (holding that Village had standing to challenge Corp of Engineer's decision to build a radio tower in its territory because the village was "flood-prone" and construction "will increase the risk of flooding").

[5] Plaintiff includes a lengthy footnote about why a dismissal on jurisdictional grounds should not be "with prejudice." Resp. 9 n.6.  Yet even within that footnote, she fails to identify any facts that she could add to cure her deficient standing.  Thus, even if a jurisdictional dismissal is not "with prejudice," it should be without leave to amend.

## II.    Precedent Forecloses Plaintiff's Ability to State a § 1981 Claim.

Independently, Plaintiff fails to state a claim under § 1981.  She argues that she can seek "prospective" declaratory relief that Amazon discriminates "among its contractors."  Resp. 9-10. But Plaintiff is not an Amazon "contractor" and has not even applied to become one.  Even if the Court were to find Plaintiff's unwillingness to apply sufficient under Article III, she ignores the clear precedent that a "1981 claim must allege that the plaintiff was actually prevented, *and not merely deterred*, from making a purchase or receiving service after attempting to do so." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751-52 (5th Cir. 2001) (emphasis added).  Plaintiff must show "the loss of an *actual, not speculative or prospective*, contract interest," which requires "evidence of some tangible attempt to contract" that "was in *some way thwarted*" by the defendant. *Id.* (emphasis added).  Having never even attempted to apply, Plaintiff does not and cannot allege facts to satisfy that requirement.[6]

Plaintiff fails to cite *any* case allowing a private plaintiff to assert a § 1981 claim for declaratory relief under the circumstances here.  Indeed, if she were correct, it would deputize private citizens to sue any company for allegedly unlawful internal policies, not because the plaintiff was actually denied a contractual benefit but-for the practice, but because the plaintiff was purportedly unwilling to apply for the job.  That is not, and cannot be, the law.

### <u>CONCLUSION</u>

For the foregoing reasons, Amazon respectfully requests that the Court grant Amazon's Motion to Dismiss (Dkt. 23) and dismiss Plaintiff's Second Amended Complaint without leave to amend.  Amazon further respectfully requests such further relief to which it may be justly entitled.

---

[6] *See also Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) ("merely alleg[ing] *possible* loss of *future* opportunities" is not enough to state a § 1981 claim); *Smart v. Int'l Bhd. of Elec. Workers, Loc. 702*, 315 F.3d 721, 726 (7th Cir. 2002) (plaintiff "point[ed] to no contract that he bid on and *failed to obtain because of racial animus*" (emphasis added)).

Dated: May 15, 2023                    Respectfully Submitted,

                                       BY: */s/ Angela C. Zambrano*
                                           Angela C. Zambrano
                                           Texas Bar No. 24003157
                                           angela.zambrano@sidley.com
                                           Margaret Hope Allen
                                           Texas Bar No. 24045397
                                           margaret.allen@sidley.com
                                           Natali Wyson
                                           Texas Bar No. 24088689
                                           nwyson@sidley.com
                                           SIDLEY AUSTIN LLP
                                           2021 McKinney Avenue, Suite 2000
                                           Dallas, Texas 75201
                                           Telephone:     (214) 981-3300
                                           Facsimile:     (214) 981-3400

                                           David R. Carpenter (*pro hac vice*)
                                           drcarpenter@sidley.com
                                           SIDLEY AUSTIN LLP
                                           555 West Fifth Street, Suite 4000
                                           Los Angeles, California 90013
                                           Telephone:     (213) 896-6000
                                           Facsimile:     (213) 896-6600

                                           */s/ Deron R. Dacus*
                                           Deron R. Dacus
                                           Texas Bar No. 00790553
                                           ddacus@dacusfirm.com
                                           The Dacus Firm, P.C.
                                           821 ESE Loop 323, Suite 430
                                           Tyler, Texas 75701
                                           Phone/Fax:     (903) 705-1117

                                           *Attorneys for Defendant Amazon.com, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on May 15, 2023.

/s/ <i>Natali Wyson</i>
Natali Wyson
