# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| CRYSTAL BOLDUC, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> AMAZON.COM INC., § <br> § <br> *Defendant.* § | Civil Action No. 4:22-CV-00615 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Amazon.com, Inc.'s Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Second Amended Complaint (Dkt. #23). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case arises out of Defendant Amazon.com, Inc.'s ("Amazon") Delivery Service Partner ("DSP") program and Amazon's diversity grants. Through the DSP program, Amazon contracts with individual companies—called DSPs—to deliver packages within their respective communities (Dkt. #23, Exhibit 1 at p. 2). If accepted into the DSP program, eligible Black/African American, Hispanic/Latinx, and Native American/Indigenous DSP owners receive a monetary stipend of $10,000 pursuant to Amazon's diversity grant program to assist with startup costs (Dkt. #15 at p. 2; Dkt. #23, Exhibit 1 at p. 4–5). DSPs owned by Whites or Asian Americans, however, receive no such stipend (Dkt. #15 at p. 2). On its website, Amazon says the following about the diversity grants:

> We're proud to announce a Diversity Grant to help reduce the barriers to entry for Black, Latinx, and Native American entrepreneurs—a $1 million commitment toward funding startup costs, offering $10,000 for each qualified candidate to build their own businesses in the U.S. With the launch of this grant program, we're investing in building a future for diverse business owners to serve their communities. If interested, please complete the diversity questions in the Financial Details section of the Application.

(Dkt. #15 at p. 2).

The application process to become a DSP owner is "lengthy, competitive, and highly selective" (Dkt. #23, Exhibit 1 at p. 2). In 2021, Amazon accepted only about 650 out of 21,000 DSP applicants into the DSP Program (Dkt. #23, Exhibit 1 at p. 2). In 2022, Amazon only accepted about 190 applicants out of 12,000 (Dkt. #23, Exhibit 1 at p. 2).

Individuals seeking to become DSP owners must first submit an online application that "provides information about previous work experience, leadership, financial health, and community involvement" (Dkt. #23, Exhibit 1 at p. 3). The online application also requires an applicant to select geographically where he or she would want to operate as a DSP owner if ultimately chosen (Dkt. #23, Exhibit 1 at p. 3). In addition, an applicant must provide proof of access to $30,000 in liquid assets and pass a credit check, background screening, and motor vehicle record check (Dkt. #23, Exhibit 1 at p. 3).

If an applicant is chosen to proceed further in the DSP selection process, he or she must participate in a recorded screening interview and then a final round of interviews (Dkt. #23, Exhibit 1 at p. 3). Applicants are also required to submit business plans (Dkt. #23, Exhibit 1 at p. 3). If successful in the final interviews, an applicant is given the chance to discuss location and financial details before Amazon makes a final decision (Dkt. #23, Exhibit 1 at p. 3). An applicant can be given an offer to become a DSP owner if he or she selected a geographic preference for which Amazon

has an opening (Dkt. #23, Exhibit 1 at p. 3). If there are no such openings, Amazon will ask the applicant to join the Future DSP program until an opening becomes available before giving an offer (Dkt. #23, Exhibit 1 at p. 4). Being in the Future DSP program does not guarantee becoming a DSP owner (Dkt. #23, Exhibit 1 at p. 4).

Plaintiff Crystal Bolduc ("Bolduc"), a forty-four-year-old entrepreneur, desires to participate in Amazon's DSP program and is "able and ready to apply" (Dkt. #15 at p. 4). Because Bolduc is White, however, she is ineligible to receive the $10,000 stipend that Amazon grants to DSP owners of an eligible race to help offset startup costs (Dkt. #15 at p. 7; Dkt. #23, Exhibit 1 at p. 5). Bolduc alleges that she started her online application for the DSP program but paused the process because she learned that she would not be eligible for the $10,000 diversity grant (Dkt. #15 at p. 5). She alleges that she will not apply to the DSP program until Amazon eliminates its racially discriminatory policy, "either by extending its $10,000 benefits to white and Asians or curtailing or eliminating the benefit entirely" (Dkt. #15 at p. 7). She alleges that she will immediately apply to the DSP program once Amazon revokes it policy (Dkt. #15 at p. 8).

Bolduc further alleges that she is an "exceptionally strong candidate" and that she would be accepted into the DSP program if she were to apply (Dkt. #15 at pp. 5–6). Bolduc alleges that she has, along with excellent budgeting and financial skills, vast experience working as a manager, dealing with insurance claims, and managing profit-and-loss statements (Dkt. #15 at p. 6). She alleges that she "interviews very well and has never interviewed for a job that she hasn't received an offer for" (Dkt. #15 at p. 6). She also claims that she is "capable of performing all of the tasks required of a [DSP], such as recruiting, hiring, and coaching a team of hourly employees, managing a fleet of delivery vehicles, and adapting to demand throughout the year" (Dkt. #15 at p. 6). On

top of everything else, Bolduc claims that she has access to at least $30,000 in liquid assets, is active in her community, and "would be open to having her business serve as an Amazon [DSP] in any location, although she was especially intrigued by the opening available in Fort Worth when she initially learned about the DSP program" (Dkt. #15 at pp. 5, 7).

On February 21, 2023, Bolduc filed her Second Amended Class-Action Complaint (Dkt. #15) asserting a cause of action under 42 U.S.C. § 1981 for racial discrimination. Specifically, Bolduc claims that Defendant is "violating 42 U.S.C. § 1981 by awarding $10,000 to its Black, Latino, and Native American contractors, while withholding this benefit from its white and Asian contractors" (Dkt. #15 at p. 9). On March 24, 2023, Amazon filed the pending motion to dismiss. On April 26, 2023, Bolduc filed her Response (Dkt. #27). On May 15, 2023, Amazon filed its Reply (Dkt. #30).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.

1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

## ANALYSIS

Amazon moves under Rule 12(b)(1) to dismiss Bolduc's claim for violation of § 1981, arguing that Bolduc lacks standing. Amazon makes both a facial and factual attack on the Court's subject matter jurisdiction. Additionally, Amazon moves under Rule 12(b)(6) to dismiss Bolduc's claim for failure to state a claim upon which relief can be granted. Each motion ultimately turns on the effect, if any, of Bolduc's failure to apply for the DSP program. Because the Court ultimately determines that Amazon's Rule 12(b)(1) motion should be granted, the Court will not address Amazon's Rule 12(b)(6) motion.

Amazon's Rule 12(b)(1) motion to dismiss asserts that the Court lacks subject matter jurisdiction over this lawsuit because Bolduc lacks Article III standing. Amazon argues that Bolduc lacks standing to challenge Amazon's DSP diversity grant program for several reasons: (1) she is not a DSP owner; (2) she is unwilling to apply to the DSP program; (3) she does not allege that applying for the DSP program would be futile; and (4) any potential injury is neither actual nor

imminent. In response, Bolduc argues that her Second Amended Complaint describes at least five present-day injuries sufficient to show standing. Those alleged injuries are as follows:

> (1) Ms. Bolduc must pay $10,000 more to start a delivery-service-partner business because she is white rather than a member of the Amazon-preferred racial categories; (2) Ms. Bolduc's ineligibility to recoup the $10,000 in startup costs on account of her race makes her unwilling to apply to Amazon's delivery-service-partner program; (3) The $10,000 stipend that Amazon promises to companies owned by blacks, Latinos, and Native Americans places Ms. Bolduc at a competitive disadvantage in the application process by drawing in minority applicants who would otherwise sit out or pursue other career opportunities; (4) The black, Latino, and Native American applicants who will compete against Ms. Bolduc for acceptance into the DSP program have more credible applications because they will automatically have an extra $10,000 in startup capital if their companies become delivery service partners; and (5) Ms. Bolduc cannot apply to the DSP program or have her company become an Amazon delivery service partner without subjecting herself to racial discrimination.

(Dkt. #15 at p. 7). Bolduc argues that her "alleged injuries do not depend on whether she ultimately gets accepted as a DSP owner or whether she directly encounters racial discrimination at the hands of Amazon" (Dkt. #27 at p. 6). She further argues that she "is suffering Article III injury *regardless* of whether she applies or is accepted into Amazon's DSP program" (Dkt. #27 at p. 6) (emphasis in original).

A federal court lacks jurisdiction over a claim if it does not allege an actual case or controversy. *See Attala Cnty. v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) ("It is axiomatic that a plaintiff seeking redress in federal court must meet the initial 'requirement imposed by Article III of the Constitution by alleging an actual case or controversy.'"). An actual case or controversy requires that a plaintiff have standing to sue. *Id.* To establish standing, the plaintiff must demonstrate that an injury is "[(1)] concrete, particularized, and actual or imminent; [(2)] fairly traceable to the challenged action; and [(3)] redressable by a favorable ruling." *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "To prevail on a claim for

6

prospective equitable relief, a plaintiff must demonstrate continuing harm or a 'real and immediate threat of repeated injury in the future.'" *Id.* (quoting *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)). The threat of a merely possible, rather than imminent, future injury is insufficient. *See id.*

The overarching issue of the parties' arguments is whether Bolduc's standing to assert a § 1981 claim can derive from an allegedly discriminatory policy to which she has not yet been subjected. The Court will address all five of Bolduc's purported injuries to determine whether she has standing to assert her § 1981 discrimination claim.

## I. The First Purported Injury

Because Bolduc is unwilling to apply for a DSP contract, which she is by no means guaranteed to receive, her first purported injury—that she must pay $10,000 more to start a DSP business because she is White—is merely hypothetical and conjectural. She is currently not obligated to pay any amount of startup costs because she has not applied to the DSP program, let alone received any contractual offer from Amazon. This kind of alleged injury is insufficient to show standing. *See High v. Karbhari*, 774 F. App'x 180, 183 (5th Cir. 2019) ("[A]llegations of conjectural or hypothetical injury are not sufficient to establish standing.").

Neither is Bolduc in imminent danger of being denied equal treatment in not receiving a $10,000 grant on account of her race. In the Court's view, this alleged danger is not imminent because an unpredictable chain of hypothetical events stands in the way. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact."). It is undisputed that Amazon's multitiered DSP selection process is lengthy, competitive, and highly

7

selective. Amazon's selection data indicates that only about 3% of applicants were accepted into the DSP program in 2021 and only about 1.6% in 2022. Therefore, whether Amazon would ultimately accept Bolduc into the DSP program, despite her allegations to the contrary, is a far cry from certainty.[1]

## II.     The Second and Fourth Purported Injuries

Bolduc next alleges that her unwillingness to apply for the DSP program, due to her ineligibility to receive the $10,000 grant on account of her race, is an injury that she is experiencing now. The Court's analysis of this injury also disposes of Bolduc's fourth purported injury that diversity grant-eligible DSP applicants will have more credible applications, which is explained at the end of this subsection.

Bolduc argues that she is suffering from a constitutionally cognizable injury because Amazon's racially discriminatory stipends have deterred her from applying to the DSP program (*see* Dkt. #27 at p. 9). But this kind of alleged harm does not fit the mold of a concrete injury. Because Bolduc has willingly refused to apply to the DSP program, she has not satisfied the general standing requirement that a plaintiff submit to a policy before bringing an action to challenge it. *See Davis v. Tarrant Cnty. Tex.*, 565 F.3d 214, 220 (5th Cir. 2009) ("In order to satisfy the standing requirement of an 'actual or imminent' injury, a plaintiff generally must submit to the challenged policy before pursuing an action to dispute it."); *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163,

---

[1] The Court disagrees with Bolduc that a different burden of standing governs an allegation of "substantial risk" as compared to an allegation of "imminent" injury. As identified by Amazon, the Fifth Circuit in *Attala County* rejected such a notion. *See Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) ("We see no necessary difference between the concepts of substantial risk and a real and immediate threat, though immediacy does imply a short timeframe."). Thus, here, Bolduc lacks standing no matter which phrasing is used.

166–71 (1972) (holding that the plaintiff lacked standing to challenge an organization's discriminatory membership policies because he never applied for membership).

Furthermore, Bolduc does not allege that it would be futile to apply to the DSP program, thus ruling out the possible applicability of a futility exception. *See Davis*, 565 F.3d at 220 ("[S]trict adherence to this general rule may be excused when a policy's flat prohibition would render submission futile.").

The Fifth Circuit's decision in *Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000), sheds further dispositive light on the matter. In *Pederson*, female undergraduate students filed suit against Louisiana State University ("LSU"), alleging that LSU had violated both: (1) Title IX by failing to field women's varsity sports teams; and (2) the equal protection clause by denying equal treatment to female varsity athletes as to the allocation of scholarship and other benefits. *Pederson*, 213 F.3d at 871–72. The Fifth Circuit determined that the plaintiffs had standing on their Title IX effective accommodation claim, holding that a party need only show that she is "able and ready" to compete for a position on an unfielded team. *See id.* at 871. The Fifth Circuit, borrowing from the Supreme Court's equal protection jurisprudence on set-aside programs, reasoned that:

> Violating Title IX by failing to field women's varsity teams that effectively accommodate the interests and abilities of the university community certainly creates a barrier for female students. In much the same way as set-aside programs, the injury here results from the imposed barrier—the absence of a varsity team for a position on which a female student should be allowed to try out.

*Id.* As for the equal protection claim, the Fifth Circuit found that the plaintiffs lacked standing to challenge the unequal treatment of female varsity athletes because no named plaintiff was a member of a varsity team. *See id.* at 872. In a footnote, however, the Fifth Circuit stated that:

9

> We do not mean to imply that an equal treatment claim can only be brought by an existing varsity athlete. Whether, for example, a female student who was deterred from competing for a spot on an existing varsity team because of perceived unequal treatment of female varsity athletes would have standing to challenge the existing varsity program is a question we leave for another day.

*Id.* at 872 n.13.

The case at hand is fundamentally distinct from *Pederson*. Bolduc's allegation that she is "able and ready to apply" to the DSP program does not establish standing in the same way that it might in a Title IX effective accommodation case because her alleged injury—an unwillingness to apply—does not result from an imposed barrier that prevents her from competing on equal footing in the DSP application process itself (Dkt. #15 at p. 4). Rather, her unwillingness to apply results from the ultimate inability to obtain the $10,000 stipend if she becomes a DSP owner. This kind of alleged harm is insufficient to show standing. *See id.*; *see also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

The Court agrees with Amazon that Bolduc falls outside the class of individuals potentially suffering a direct and personal injury: DSP owners who have been denied any contractual benefit due to their race. *See Pederson*, 213 F.3d at 872 n.14 ("The treatment of participants in female varsity athletics has not impacted plaintiffs as they have not been female varsity athletes . . . Plaintiffs have personally suffered no injury or threatened injury due to LSU's allegedly illegal treatment of its varsity athletes . . . ."). The Court does not believe that the dicta in *Pederson* carries the day for Bolduc. Though the Fifth Circuit in *Pederson* did not affirmatively exclude the possibility of deterrence being used as a method to show standing in the context of

10

equal protection, the Court cannot square such an attenuated theory of standing in the § 1981 context with the vast body of caselaw demanding an injury of a more concrete nature. *See, e.g., Moose Lodge*, 407 U.S. at 166–68 (expressly declining to hold that the "chilling effect" of a discriminatory membership policy could create standing for individuals who never applied for membership); *Attala Cnty.*, 37 F.4th at 1042 (holding that prospective Black jurors lacked standing to challenge racial discrimination in jury selection where it was speculative that they would experience it themselves); *Do No Harm v. Nat'l Ass'n of Emergency Med. Technicians*, No. 3:24-CV-11-CWR-LGI, 2024 WL 245630, at *3 (S.D. Miss. Jan. 23, 2024) ("[T]he caselaw suggests infirmities in [plaintiff's] standing to bring this § 1981 claim. Its member has apparently only been deterred from applying, rather than refused a contract.") (citing *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358–59 (5th Cir. 2003)); *Albuquerque Indian Rights v. Lujan*, 289 U.S. App. D.C. 164, 930 F.2d 49, 57 (1991) (holding that the plaintiffs lacked "concrete, personal harm" even though they were discouraged from applying for jobs at the Department of the Interior which refused to apply Indian hiring preferences afforded by federal law).

Bolduc's proposed theory that she is suffering a personal injury in fact because Amazon's diversity grant policy has deterred her from applying to the DSP program, *regardless of whether the policy creates a discriminatory barrier of entry in the DSP application process itself*, is not supported by precedent. *See, e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 368 n.52 (1977) ("Resolution of the nonapplicant's claim, however, requires two distinct determinations: that he would have applied but for discrimination and that he would have been discriminatorily rejected had he applied."). Bolduc cites no authority from the realm of § 1981 caselaw directly supporting her novel theory of standing. And the Court is only aware of authority that appears to contradict

11

her position or that has not encountered the exact issue. *See Moose Lodge*, 407 U.S. at 166–68; *Albuquerque Indian Rights*, 930 F.2d at 57; *Do No Harm*, 2024 WL 245630, at *3 (finding that a plaintiff who had "only been deterred from applying, rather than refused a contract," did not have standing to bring a § 1981 claim); *Lowery v. Texas A&M Univ.*, No. 4:22-CV-03091, 2023 WL 6445788, at *4 (S.D. Tex. Sept. 29, 2023) ("[The plaintiff] can't simply assume the conclusion— that ongoing discrimination exists and is injuring him—without substantially rewriting Article III standing for employment-discrimination claims. [Otherwise], any putative plaintiff could sue a potential employer without ever applying, simply upon allegation the posited discriminatory practices deterred application. That's not enough.").

While it is true, again, that under certain circumstances a plaintiff can establish standing by alleging that applying would be a futile gesture, Bolduc has not done so here. The rationale conferring standing in such cases derives from the specific condition that unlawful discrimination permeates the application process itself. *See Int'l Bhd. of Teamsters*, 431 U.S. at 365 (holding that Title VII seniority relief can be awarded to nonapplicants who are deterred from applying and are "unwillingly to subject themselves to the humiliation of explicit and certain rejection" because of a discriminatory policy); *Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998) ("It would have been futile in this case for the [plaintiffs] to apply for permits because the Corps sent them a letter . . . specifically stating that it would not permit the construction or placement of any structures on their land."); *Moore v. USDA ex rel. FMHA*, 993 F. 2d 1222, 1222–224 (5th Cir. 1993) (holding that White farmers' suit should not have been dismissed for failing to complete a loan application because they received a letter from the FMHA rejecting their loan application based on their race). Here, Bolduc has offered no evidence establishing that applying to Amazon's DSP

12

program would have been in vain due to discriminatory practices in the application process itself. Thus, the Court must conclude that Bolduc will not necessarily be denied any contractual benefit due to her race unless she is accepted into the DSP program. And, as explained previously, Bolduc's acceptance into the DSP program is a speculative matter and far from imminent.

The Court declines to accept at face value Bolduc's allegations to the contrary that Amazon implements unlawful discriminatory practices in the DSP application process. Amazon has offered a sworn declaration from its DSP Acquisition Senior Manager in support of its factual attack on subject matter jurisdiction (Dkt. #23, Exhibit 1). The declaration indicates that the potential eligibility for diversity grants is not considered during the DSP application process and cannot be used to supplement or replace the requirement that an applicant prove access to $30,000 in liquid assets (*see* Dkt. #23, Exhibit 1 at p. 4). Bolduc has not offered any evidence of her own to refute Amazon's evidence. The Court, therefore, disregards Bolduc's unsupported allegation that because of her ineligibility for the $10,000 stipend, her application is less credible than applications submitted by Black, Latino, and Native American applicants—which resolves the parties' standing arguments on Bolduc's fourth purported injury. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (holding that if a defendant makes a factual attack on subject matter jurisdiction, a plaintiff is "required to submit facts through some evidentiary method" and has the burden of proving subject matter jurisdiction by a preponderance of the evidence).

### III.     The Third Purported Injury

Bolduc also asserts that she is suffering from a competitive disadvantage in the DSP application process because the diversity grant program is "drawing in minority applicants who would otherwise sit out or pursue other career opportunities (Dkt. #15 at p. 7). For much of the

same reasoning applied above, the Court finds this purported injury insufficient to establish standing.

This injury, much like Bolduc's first one, is hypothetical and conjectural in nature. *See High*, 774 F. App'x at 183. Bolduc has chosen not to apply to the DSP program and, thus, cannot currently suffer from a competitive disadvantage. The possibility that such harm even occurs rests purely on a "speculative chain of possibilities" that is too tenuous to be considered imminent. *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) ("An injury that is based on a 'speculative chain of possibilities' does not confer Article III standing.); *see Attala Cnty.*, 37 F.4th at 1042 ("The threat of future harm must be 'certainly impending'; mere '[a]llegations of possible future injury' do not suffice."). Accordingly, Bolduc's perceived threat that she will suffer a competitive disadvantage is too theoretical and remote to prop up standing.

### IV. The Fifth Purported Injury

The final injury that Bolduc asserts is that she "cannot apply to the DSP program or have her company become an Amazon [DSP] without subjecting herself to racial discrimination" (Dkt. #15 at p. 7).

As discussed previously, Bolduc has failed to defend against Amazon's factual attack on subject matter jurisdiction because she has not offered evidence in support of her allegation that she would be subjected to racial discrimination in Amazon's DSP application process. *See supra* Part II. Normally, if a defendant files a Rule 12(b)(1) motion, the Court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson*, 644 F.2d at 523. But because Amazon has lodged a factual attack on the Court's subject matter jurisdiction, the Court is not required to presume the truth of Bolduc's allegations. *See id.*

Bolduc must submit evidence proving that she has standing to seek injunctive relief on these grounds. *See id.* Because she has submitted no evidence, the Court has no reason to believe that she would face unlawful discrimination in Amazon's DSP application process.

To come full circle, Bolduc's claim that she would be subjected to racial discrimination flows from a hypothetical chain of possibilities that might never come to pass. She may never receive a contractual offer from Amazon to become a DSP owner and, therefore, may never be denied a contractual benefit due to her race. This lack of impending harm, to some degree generated by Bolduc's own unwillingness to apply to the DSP program, is fatal to her standing on these grounds.

***

Because Bolduc has failed to demonstrate that she is suffering from an injury that is "concrete, particularized, and actual or imminent," she lacks standing to assert her § 1981 claim. *See Attala Cnty.,* 37 F.4th at 1042. Therefore, the Court lacks subject matter jurisdiction over Bolduc's only claim and the Court must dismiss the current lawsuit. *See id.* All other pending motions must, accordingly, be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant Amazon.com, Inc.'s Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Second Amended Complaint (Dkt. #23) is hereby **GRANTED in part** and **DENIED in part**. Plaintiff Crystal Bolduc's § 1981 claim is hereby **DISMISSED without prejudice**. The Court will render a Final Judgment consistent with this Memorandum Opinion and Order separately.

**IT IS SO ORDERED**.

**SIGNED this 25th day of April, 2024.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE